**CHIROPRACTIC COOPERATIVE AS-SOCIATION OF MICHIGAN, Plaintiff,**

**v.**

**AMERICAN MEDICAL ASSOCIATION; American Hospital Association; Joint Commission on Accreditation of Hospitals; American Osteopathic Association; Michigan State Medical Society; Munson Medical Center; Michigan Osteopathic Association; H. Doyl Taylor; Joseph A. Sabatier, Jr., M.D.; H. Thomas Ballantine, M.D.; and James H. Sammons, M.D., Defendants.**

**Civ. A. No. 83 CV 2701 DT.**

United States District Court, E.D. Michigan, S.D.

June 24, 1985.

Paul Wright, Warren, Mich., for Chiropractic Assn. of Michigan.

Douglas Carlson, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Thomas Tallerico, Detroit, Mich., for American Hosp. Ass'n, Dr. Ballantine, Doyl Taylor, Joint Com'n on Accreditation of Hospitals, Dr. Joseph A. Sabatier, Jr., M.D., and Dr. James H. Sammons, M.D.

Linda Tomaselli, Chicago, Ill., Robert Cutler, Detroit, Mich., for American Hosp. Ass'n.

James Kohl, Detroit, Mich., for James Decker Munson Hosp.

John Campbell, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Grady Avant, Detroit, Mich., for American Osteopathic Ass'n.

William Sankbeil, Kerr, Russell & Weber, Detroit, Mich., for Michigan State Medical Soc.

David Paruch, Clark, Klein & Beaumont, Detroit, Mich., for Michigan Osteopathic Ass'n.

Patrick Wilson, Traverse City, Mich., for Munson Medical Center.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter arises out of an action commenced by the Chiropractic Cooperative Association of Michigan, an association of twenty-one Michigan chiropractors incorporated for purposes of prosecuting this action. In its amended complaint, Plaintiffs allege that Defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, seeking both injunctive relief and monetary damages against the various Defendants. The essence of Plaintiffs' allegations are that the Plaintiff chiropractic profession competes with members of the medical and osteopathic professions for delivery of certain kinds of health care services to the

general public, and that the Defendants have attempted to monopolize and conspire to monopolize such health care services and unreasonably restrain chiropractic doctors in the delivery of health care services and isolate and eliminate the chiropractic profession, thereby increasing the overall costs of health care in the United States, impeding the growth of the chiropractic profession, causing economic injury to Plaintiff and endangering the public health and welfare. Plaintiff alleges that Defendants engaged in a conspiracy to eliminate the chiropractic profession by refusing to deal with chiropractors and engaging in a group boycott, prohibiting medical and osteopathic doctors from referring patients to chiropractic doctors, refusing to permit health facilities to deal in goods or services with chiropractic doctors, prohibiting association of medical doctors and osteopathic doctors in a group practice with chiropractic doctors and by sponsoring and publicizing position papers, policy statements and studies critical of the chiropractic profession and by exerting group pressure in an effort to obtain executive, administrative, judicial and legislative action adverse to the chiropractic profession. In support of this allegation, Plaintiff contends that in 1963, the American Medical Association (AMA) established a "Committee on Quackery" whose "prime mission was the containment and ultimate elimination of chiropractic." Plaintiff alleges that in pursuit of such goal, Defendant AMA employed its Principles of Medical Ethics to prohibit the inter-professional relationship of medical doctors with the chiropractic profession. Plaintiff contends that similar canons of ethics and policy statements were adopted and advanced by Defendant American Osteopathic Association. Plaintiff further alleges that the AMA, the American College of Physicians (ACP), the American College of Surgeons (ACS), and the American Hospital Association (AHA) conspired with the Joint Commission on Accreditation of Hospitals (JCAH) to proscribe associations between doctors of chiropractic and hospitals. Plaintiff also alleges that through such agreement, Defendants attempted to mono-

polize and conspired to monopolize certain health care markets.

Defendants deny the existence of any such alleged concert of action or that medical doctors compete with chiropractors. Defendants also deny that their conduct had anti-competitive purposes or a substantial anti-competitive effect or that any injury resulted from Defendants' activities. Defendants contend that the evidence will show that Defendants' actions fostered free competition and protected consumers of health care services from exploitation through deception and the hazards of unscientific treatment. Defendants aver that many of their activities were undertaken for the purpose of influencing legislation, and, as such, were protected under the first amendment. Further, Defendants aver that concern for the public health and patient care justifies any alleged anti-competitive effect.

This matter is presently before the Court on Plaintiff's Motion in Limine to strike the affirmative defense of "good faith concern for the public health, safety and welfare," laches, unclean hands, and the defense of "modified rule of reason/patient care."

As an initial matter, this Court notes that Plaintiff improperly relies on Rules 12(b) and 56 of the Federal Rules of Civil Procedure as the bases for its motions to strike. As Defendant AMA notes, the appropriate mechanism to strike a defense is Rule 12(f). *See Brown and Williamson Tobacco Corp. v. United States*, 201 F.2d 819 (6th Cir.1953); Wright & Miller, *Federal Practice and Procedure*, § 1380 at 782–784 (1969). Because striking a portion of the pleading is such a drastic remedy, such motions are generally viewed with disfavor and rarely granted. *Brown*, 201 F.2d at 822.

The Court will now address Plaintiff's motions.

I. *Affirmative Defenses of Good Faith Concern for the Public Health, Safety and Welfare and Patient Care*

In its motion, Plaintiff contends that this Court should strike the affirmative defense

of the protection of the public health, safety and welfare and patient care raised by numerous Defendants and prohibit the introduction of any evidence relating thereto at trial,[1] alleging that a *per se* rule bars consideration of and renders irrelevant any possible justification or motivation by Defendants.

■ In determining whether an agreement, contract or alleged conspiracy violates Section 1 of the Sherman Act,[2] the Supreme Court has long applied the Rule of Reason Analysis. In the case of *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911), the Supreme Court established the now well-recognized rule that although Section 1 conceivably could apply to all contracts, that section would only be invoked to invalidate contracts or agreements which "unreasonably" restrain trade. 221 U.S. at 63–65, 31 S.Ct. at 517–18. Such "Rule of Reason," recognized at common law, became the standard for analyzing contracts or agreements under Section 1 of the Sherman Act. 221 U.S. at 59–62, 31 S.Ct. at 515–17. The Court in *Standard Oil* also noted that certain types of contracts, due to their well-known "nature and character," were conclusively presumed at common law to unreasonably restrain trade without the need for weighing and balancing the harm caused by such restraints against the benefits to society produced by them. The Court concluded that such a *per se* rule of unreasonableness would also apply in certain situations under the Sherman Act.[3] 221 U.S. at 65, 31 S.Ct. at 517.

■ In the seminal opinion of *Board of Trade of the City of Chicago v. United States*, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918), the Supreme Court established the often cited formulation or the elements of the "Rule of Reason" analysis which applies to all contracts falling under Section 1, except for those types of contracts entitled to *per se* treatment. In that case, the government sought to enjoin enforcement of the "Call" Rule of the Board of Trade of Chicago which prohibited members of the Board from purchasing or offering to purchase grain commodities after the exchange closed for the day at other than the closing bid on the exchange, alleging that such rule violated the antitrust law. 246 U.S. at 237, 38 S.Ct. at 243. The defendants admitted the adoption and enforcement of the Call Rule, but alleged that the purpose of the rule was not to prevent competition or control prices, but to promote the convenience of the members and to break up a monopoly in grain trade acquired by several warehousemen. *Id.* The district court struck allegations of the defendants to this effect and excluded evidence at trial concerning the purpose of the rule, and the court found defendants liable for conspiring to restrain trade merely upon a showing that defendants adopted, acted upon and enforced the "Call" Rule. Id. at 237–38, 38 S.Ct. at 243–44. In holding that the trial court committed error by excluding evidence of the purpose of the rule, the Supreme Court rejected the proposition that the "Call" Rule was *per se* illegal or unreasonable. *Id.* at 238, 38 S.Ct. at 243. Rather, the Court concluded that such agreement must be tested under the "Rule of Reason" to determine if such rule is an unreasonable restraint of trade. Writing for the majority, Justice Brandeis

---

**1.** Plaintiffs move to strike affirmative defenses number 3 and number 5 of the Michigan Osteopathic Association; affirmative defense number 2 of the JCAH; affirmative defense number 8 of the AHA; affirmative defenses number 3 and 4 of the Michigan State Medical Society (MSMS); affirmative defenses number 2 and 4 of the AOA; affirmative defenses number 5, 6, 7 and 8 of the Munson Medical Center, and affirmative defense numbers 4, 8, 9, 10 and 11 of the AMA.

**2.** Section 1 of the Sherman Act provides in pertinent part that "[e]very contract, combina-

tion ... or conspiracy in restraint of trade or commerce among the several States, or with foreign nations is ... illegal." 15 U.S.C. § 1.

**3.** The practices traditionally deemed *per se* illegal under the Sherman Act are price fixing, division of markets, group boycotts, and tying arrangements. *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *See also Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 344 n. 15, 102 S.Ct. 2466, 2473 n. 15, 73 L.Ed.2d 48 (1982).

set forth the classic statement of the "Rule of Reason:"

> Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence. The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences. The District Court erred, therefore, in striking from the answer allegations concerning the history and purpose of the Call rule and in later excluding evidence on that subject.

246 U.S. at 238–39, 38 S.Ct. at 243–44. *See also National Society of Professional Engineers v. United States,* 435 U.S. 679, 691, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). The essence of a Rule of Reason analysis requires this Court to balance the procompetitive and anti-competitive effects.

In the matter before this Court, the Defendants contend that to strike the defense of good faith concern for the public health and patient care would bar Defendants from rebutting Plaintiff's allegations that Defendants' actions were detrimental to the public health and general welfare, and in particular, patient care, and from demonstrating that Defendants' actions promoted competition by improving the quality of scientific patient care and from demonstrating that Defendants' actions promoted competition by improving the quality of scientific patient care services.

In support of its contention that the Court should strike such affirmative defenses, and presumably exclude all evidence with respect thereto at trial, Plaintiff contends that two recent Supreme Court decisions, *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), and *Jefferson Parish Hospital v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 1565 n. 41 and 42, 80 L.Ed.2d 2 (1984), dictate that a *per se* rule should be applied to the medical profession.

Although it is true that "learned professions," such as those involved in this case, are not exempt from operation of the Sherman Act, *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 787, 95 S.Ct. 2004, 2013, 44 L.Ed.2d 572 (1975), the Supreme Court has made no definitive statement that the actions of the learned professions in restraint of trade only are entitled to *per se* treatment under the Sherman Act, and the Court declines the invitation to adopt such a rule in the absence of clear direction from the Supreme Court. *See White Motor Co. v. United States,* 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 344, 349 n. 19, 102 S.Ct. 2466, 2475 n. 19, 73 L.Ed.2d 48 (1982). In fact, the Supreme Court in *Goldfarb* recognized that careful consideration is necessary in determining whether a particular restraint involves the Sherman Act where the restraint operates upon a profession as distinguished from a business. The Court in *Goldfarb* emphasized that certain practices by members of the learned profession such as "public service" might be acceptable under the "Rule of Reason." 421 U.S. at 788–89, 95 S.Ct. at 2014–15. The Court in *Goldfarb* went on to state:

> The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining whether that particular restraint violates the Sherman Act. It would be unrealistic to view the practice of professions as interchangeable with other business activities, and automatically to apply to the professions antitrust concepts

which originated in other areas. The public service aspect, and other features of the professions, may require that a particular practice, which could properly be viewed as a violation of the Sherman Act in another context, be treated differently.

421 U.S. at 788–89 n. 17, 95 S.Ct. at 2014–15 n. 17; *see also National Society of Professional Engineers*, 435 U.S. at 696, 98 S.Ct. at 1367. Although the Supreme Court has not delineated the exact nature or the circumstances under which learned professions should be accorded different treatment for purposes of the anti-trust laws, the Court has, on more than one occasion, intimated that considerations such as public welfare, quality of service, and ethical norms of the profession may be appropriate in applying the Rule of Reason. *See Arizona v. Maricopa County Medical Society*, 457 U.S. at 349, 102 S.Ct. at 2475; *National Society of Professional Engineers v. United States*, 435 U.S. at 679, 698 n. 22, 98 S.Ct. at 1368 n. 22; *see also Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942, 949 n. 12 (6th Cir.1983).

In fact, in a case which presented almost identical facts and issues, the Court of Appeals for the Seventh Circuit recently held that a challenge by chiropractors to the practices of the AMA and other related defendants, dictated analysis under the "Rule of Reason." *Wilk v. AMA, et. al.*, 719 F.2d 207 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). In rejecting the district court's conclusion that the alleged refusal to deal might be considered a *per se* violation of the Sherman Act, the court noted that the existence of the "patient care motive" in the context of an alleged violation of the Sherman Act by those in the medical profession rendered the case inappropriate for *per se* treatment. 719 F.2d at 221. The Court went on to state:

> We know from *Professional Engineers* and *Maricopa County* that an agreement to fix prices will not escape *per se* treatment simply because it is entered into by professionals and accompanied by ethical protestations. But a canon of medical ethics purporting, surely not frivolously, to address the importance of scientific method gives rise to questions of sufficient delicacy and novelty at least to escape *per se* treatment.

719 F.2d at 222. Plaintiff contends that such a holding by the Seventh Circuit is "unprecedented, in conflict with existing law and dramatically wrong," especially in light of the recent Supreme Court anti-trust decision in *Jefferson Parish Hospital v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551 ns. 41 and 42, 80 L.Ed.2d 2 (1984). Plaintiff contends that the Court in *Hyde* rejected the contention that a *per se* rule was inappropriate due to the existence of a patient care motive. This statement is incorrect. The issue addressed in *Hyde* was whether a hospital's contract with a firm of anesthesiologists which required all anesthesiological services for hospital patients be performed by that firm gave rise to a tying arrangement which was illegal *per se* under the Sherman Act. 104 S.Ct. at 1554. The Court, per Justice Stevens, concluded that the facts of the case did not support a basis for applying a *per se* rule to the tying arrangement in question because the requisite market power necessary to force the purchase of the tied product, the anesthesiological services, was not established. 104 S.Ct. at 1566–67. The footnotes in *Hyde* cited by Plaintiff in support of its motion to strike the defenses of patient care motive and public interest motive merely recognize that if there had been sufficient evidence of market power such as to establish a *per se* illegal tying arrangement under the facts of the case, the existence of a patient care motive would be irrelevant and improper. 104 S.Ct. at 1551 ns. 41 and 42. Contrary to Plaintiff's contention, however, the *Hyde* case did not clearly overrule any form of "patient care" defense. Rather, the Court simply concluded that the patient care defense was irrelevant where a *per se* illegal tying arrangement was established.

■ Such a conclusion is in complete accord with prior Supreme Court precedent and does not now mandate that this Court adopt a *per se* rule in this case. In *Arizo-*

na v. Maricopa County Medical Society, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), the Supreme Court held that the use of a maximum fee schedule by health care providers, like price fixing agreements, are per se violations of the Sherman Act, and such conclusive presumption of illegality bars consideration of the procompetitive justifications. 457 U.S. at 351. Similarly, in the National Society of Professional Engineers v. United States, 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), the Court held that the engineering association's canon of ethics which prohibited all competitive bidding by its members interfered with the setting of price by free market forces, and like agreements to fix prices, was per se illegal under the Sherman Act. 435 U.S. at 679, 98 S.Ct. at 1355. The Court rejected the defendant's contention that under the Rule of Reason the canon of ethics which restricted all price competition among members was justified because it was adopted for the purpose of minimizing the risk that competition would produce inferior engineering work and endanger the public safety. 435 U.S. at 694, 98 S.Ct. at 1366. The Court in the National Engineers case concluded that where an anticompetitive effect is established, consideration of whether price competition ultimately inures to the public benefit is irrelevant. 435 U.S. at 695, 98 S.Ct. at 1367. See also Arizona v. Maricopa County Medical Society, 457 U.S. at 343–45, 102 S.Ct. at 2472–74; Accord Wilk v. American Medical Association, 719 F.2d 207, 228 (7th Cir.1983).

Contrary to Plaintiff's contention, these cases do not dictate the conclusion that the defenses of concern for public health, safety, and welfare and patient care must be stricken or that such evidence is categorically irrelevant under the Rule of Reason which must be applied in this case. In so ruling, this Court is mindful of the proposi-

tion established in the National Engineers case, that where the facts of a case clearly establish an anticompetitive effect the public interest or safety serves as no justification. However, under the facts of this case, it is far from clear whether the actions of the various Defendants had an anticompetitive effect, and consequently, considerations of public interest and patient care are not totally irrelevant under the Rule of Reason. The Court also recognizes the limited role such evidence of intent or purpose may play as sanctioned by the Supreme Court in Chicago Board of Trade in determining the ultimate issue of whether the actions of the Defendants in this case promote or suppress competition[4] but concludes that questions of admissibility of evidence are more properly addressed when they arise during the course of the trial. It would be improper for this Court to anticipate in advance of trial whether the evidence will establish an anticompetitive effect and thus render irrelevant any possible public safety or interest justification.

Accordingly, Plaintiff's motion to strike the affirmative defenses of public interest and patient care and to exclude all evidence in regards thereto will be denied. An appropriate order shall enter.

## II. Affirmative Defense of Laches and Unclean Hands

Plaintiff also brought a motion to strike the affirmative defenses of laches and unclean hands. Plaintiff did not specifically address the issue of laches in its brief in support of the motion, and the Plaintiff agreed at oral arguments that although its motion on laches was abandoned it reserved the right to raise it at a later date.

In addition, the parties agreed that a decision on the motion to strike the affirmative defense of unclean hands would be

4. See Wilk v. American Medical Association, 719 F.2d at 224–25, for a discussion of the limited role evidence of intent or purpose plays in consideration of the effect of the challenged actions as anticompetitive under the Sherman Act. As the Seventh Circuit in Wilk noted, the Chicago Board of Trade case sanctioned the consideration of the reason for adopting a particular remedy and the purpose or end sought to be attained merely to assist the court in determining the effect of the defendant's conduct on competition. 719 F.2d at 225.

reserved until after discovery in this matter was complete.

Accordingly, Plaintiff's motion to strike the affirmative defenses of public interest and patient care and to exclude all evidence in relationship thereto will be denied. Plaintiff's motions to strike the affirmative defenses of unclean hands and laches also will be denied without prejudice to the Plaintiff. An appropriate order shall enter.