**FRAGALE & SONS BEVERAGE CO.,**
Appellant in 84–5615,

v.

**DILL, Victor, d/b/a Dill's Beverage Company and Pastella, Carmen and Pastella, Donna, his wife, d/b/a Emporium Beverage Company, Inc.**

**FRAGALE & SONS BEVERAGE COMPANY, Appellant in 84–5616,**

v.

**BONINI TOBACCO COMPANY, INC.; Pastella, Carmen and Pastella, Donna, his wife, d/b/a Emporium Beverage Company.**

Nos. 84–5615, 84–5616.

United States Court of Appeals,
Third Circuit.

Argued March 21, 1985.

Decided April 15, 1985.

Susan A. Yohe (argued), Strassburger McKenna Messer, Shilobod & Gutnick Pittsburgh, Pa., for appellant.

Michael Buchwach (argued), Spector & Buchwach, Pittsburgh, Pa., Norbert J.

Pontzer, Pontzer & Pontzer, Bridgeway, Pa., for Victor Dill, d/b/a Dill's Beverage Co.

John P. Merlo (argued), Cambria Sav. Bldg., Indiana, Pa., for Bonini Tobacco Co., Inc.

Harry J. Gruener, Raphael, Gruener & Raphael, P.C., Pittsburgh, Pa., for Carmen Pastella and Donna Pastella, his wife, d/b/a Emporium Beverage Co., Inc.

Before HUNTER, GARTH, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

■ Plaintiff-appellant Fragale & Sons Beverage Company ("Fragale") appeals from an order granting summary judgment in favor of defendant-appellees Dills Beverage, Inc. ("Dills"), Bonini Tobacco Co., Inc. ("Bonini"), and Emporium Beverage Co., Inc. ("Emporium"). Fragale filed this consolidated action in the United States District Court for the Middle District of Pennsylvania, alleging in two separate complaints that Dills and Emporium, and Bonini and Emporium, respectively, conspired in violation of section 1 of the Sherman Antitrust Act ("the Sherman Act"), 15 U.S.C. § 1 (1982), to drive Fragale out of the beer retailing business in the Cameron County, Pennsylvania area. Both complaints also alleged that all defendants violated section 2 of the Sherman Act, 15 U.S.C. § 2 (1982), by monopolizing or attempting to monopolize the beer retail business in Cameron County. Because we find that genuine issues of material fact exist as to the allegations under both sections 1 and 2 of the Sherman Act, we reverse and remand for further proceedings on both complaints.

### I.

As part of a broad regulatory scheme, the Commonwealth of Pennsylvania licenses all distributors of malt and brewed bev-

---

* Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

erages. 47 Pa.Cons.Stat.Ann. § 4–431 (Purdon 1969). The holder of what is commonly known as an "ID" license generally buys directly from a beer wholesaler, and may resell to individual purchasers, retail accounts, or other distributors. The holder of what is commonly known as a "D" license, on the other hand, may not buy directly from beer wholesalers or sell to other distributors, but may sell to individual purchasers and retail accounts. Although all defendants in this case hold "ID" licenses, Bonini and Dills sell exclusively to other distributors, while Emporium sells almost exclusively to individual and retail accounts. Fragale, as a "D" license holder, sells only to individual and retail accounts.

The dispute in this case centers on the beer retail business in Cameron County, Pennsylvania.[1] Bonini and Dills are the exclusive distributors of Anheuser-Busch and Stroh's products, and Miller's and Genessee products, respectively, in a territory that includes Cameron County. Emporium buys from both distributors, and then resells all four brands of beer to individual and retail accounts in Cameron County. This action arises from the refusal of Bonini and Dills to enter into a similar relationship with Fragale in late 1981 and early 1982.

Prior to late 1981, Emporium competed with a distributorship named Jones, and later its successor Snell's, for retail accounts and individual sales in the Cameron County market. In November of 1981, Snell's went out of business, leaving Emporium as the only retail distributor in Cameron County. Fragale then bought the defunct Snell's and reopened the distributorship in February, 1982.

Prior to opening its new business, Fragale contacted all of Jones' and Snell's suppliers, including Dills and Bonini, and asked whether the suppliers would be willing to provide Fragale with various brands of beer for resale. According to Fragale, Bonini agreed in late 1981 to sell Fragale Anheuser-Busch and Stroh's products. Dills responded to Fragale's request by telling Michael Fragale that he would not decide until Fragale received its "D" license from the Commonwealth.

According to Fragale, the attitude of both Dills and Bonini changed dramatically by February of 1982. Bonini repudiated its agreement to sell beer to Fragale, allegedly because Bonini believed that the Cameron County market would not support both Emporium and Fragale.[2] Dills informed Fragale that it would only sell to Emporium in the Cameron County area, and has continued to refuse to sell any beer to Fragale.

Fragale alleges that between November of 1981, when Michael Fragale first approached Dills and Bonini, and February of 1982, when both Dills and Bonini refused to sell to Fragale, Carmen Pastella of Emporium visited both Dills and Bonini for the purpose of encouraging them not to sell to Fragale. Although accounts of the meetings differ, representatives of both Dills and Bonini testified at depositions that they told Pastella that they would not sell beer to Fragale.

In early 1982, Dills and Bonini offered reasons for their decisions not to sell to Fragale. Dills told Fragale that two distributors in the Cameron County market presented problems for Dills, and that Fragale was too inexperienced in the beer retail business. Bonini told Fragale that there was not enough business in Cameron County to justify two distributorships. During the pendency of this action, however, both Dills and Bonini supplemented their reasons for refusing to deal with Fragale. Representatives of Dills testified in depositions that Fragale's small size did not warrant the extra paperwork that sales to Fragale would necessitate, that selling exclusively to Emporium would encourage Emporium to promote Dills' products, and

---

1. Although throughout our opinion we refer to the Cameron County area, we make no finding as to whether Cameron County is the relevant geographic market.

2. Eventually, Bonini agreed to sell Fragale beer for individual resale only. Fragale alleges, however, that Bonini still refuses to sell Fragale beer for resale to the more lucrative retail accounts.

that it is easier to trace stale beer if only one distributor is involved. Representatives of Bonini similarly testified at depositions that selling exclusively to Emporium would encourage more active marketing of Bonini's products, and that Fragale was too inexperienced to succeed in the beer retail business.

During discovery and in response to defendants' Motion for Summary Judgment, Fragale challenged each of defendants' articulated reasons for refusing to deal with Fragale. First, Fragale demonstrated that both Dills and Bonini sell to more than one distributor in markets comparable in size to Cameron County, and that Dills sells to every other distributor in its territory except for Fragale. Second, to rebut defendants' contention that Cameron County could only support one distributor, Fragale noted that, except for a brief time period between Snell's and Fragale, Cameron County had supported two distributors and that one of those distributors, Jones, engaged in price competition with Emporium. Third, Fragale alleged that Emporium did not and in fact could not actively promote Dills' and Bonini's products in exchange for an exclusive dealing arrangement, because advertising in the beer market originates with the manufacturer, and not the retailers. Finally, Fragale contested whether experience was necessary in the beer retail business, and alleged that both Dills and Bonini sell to smaller distributors than Fragale.

Following defendants' refusal to deal, Fragale filed these separate antitrust actions, one against Dills and one against Bonini. Fragale joined Emporium in both actions. Fragale alleged that Emporium conspired with both Dills and Bonini to keep Fragale out of the Cameron County beer retail market, and that this conspiracy was a *per se* violation of section 1 of the Sherman Act. Fragale also alleged that even if this conspiracy was not a *per se* violation of the Act, it unduly restrained trade, and was thus unlawful under the "rule of reason" test. *See, e.g., Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Finally, Fragale alleged that all defendants, by creating a situation where Emporium was the only beer retailer in the Cameron County market, violated section 2 of the Sherman Act.

After extensive discovery, the defendants moved for summary judgment, contending that there was insufficient evidence to support a conspiracy under either sections 1 or 2 of the Act, and alternatively that the pervasive state regulatory scheme exempted beer distributors and their practices from federal antitrust scrutiny. The district court addressed only the first contention, and held that Fragale demonstrated insufficient evidence of a conspiracy to submit the antitrust claims to a jury. The court then granted summary judgment in favor of the defendants on both the section 1 and 2 claims.

## II.

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only where the moving party establishes that no genuine issue exists as to any of the material facts in the case, and that he is entitled to judgment as a matter of law. *See, e.g., Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir. 1981). Courts should resolve any doubts as to the existence of issues of material fact against the moving party, and view all inferences in the light most favorable to the nonmoving party. *See, e.g., Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Although the standard does not differ in the antitrust context, the Supreme Court has cautioned that a court should tread carefully where motive and intent are important issues. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) ("We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged

conspirators, and hostile witnesses thicken the plot.").

■ Section 1 of the Sherman Act prohibits "[e]very contract, combination ..., or conspiracy" that unduly restrains interstate commerce. 15 U.S.C. § 1 (1982). Because of this concerted action requirement, unilateral or independent activity, no matter what its motivation, does not violate section 1. *See, e.g., Monsanto Co. v. Spray-Rite Service Corp.,* — U.S. —, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Thus, both Dills and Bonini may lawfully refuse to sell to Fragale, for whatever reason, so long as they act independently from any agreement between themselves or between each other and Emporium. *See, e.g., Edward J. Sweeney & Sons, Inc. v. Texaco,* 637 F.2d 105, 110–11 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981); *Cernuto, Inc. v. United Cabinet Corp.,* 595 F.2d 164, 167 (3d Cir.1979).

■ Even where concerted action exists, the standard of liability depends on the nature of the violation. Generally, concerted activity under section 1 is unlawful only if it violates the "rule of reason;" that is, "that the combination or conspiracy produces adverse, anti-competitive effects within relevant product and geographic markets...." *Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978). Some types of concerted activity, however, "because of their pernicious effect on competition and lack of any redeeming virtue," are treated as *per se* violations of section 1, without any inquiry into the harm such activity may have caused in the relevant market. *Northern Pacific Railroad Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Examples of concerted business practices that courts have labeled as *per se* violations include price-fixing and classic group boycotts. *See, e.g., United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (price-fixing); *Malley-Duff & Assoc. v. Crown Life Ins. Co.,* 734 F.2d 133, 142 (3d Cir.1984) (group boycotts).

In this case, Fragale alleges that defendants' common scheme to keep Fragale out of the beer retail market constitutes a *per se* violation because the inferred purpose of defendants' activity is to restrain price competition by forcing Fragale out of the relevant market, or alternatively that defendants' activity, even if not motivated by price concerns, cannot pass scrutiny under the "rule of reason" test. Crucial to either theory, however, is proof of concerted activity, which the district court found wanting in this case.

■ The Supreme Court recently discussed the evidentiary standard that a plaintiff must meet to establish unlawful concerted activity under section 1 in a refusal to deal case. In *Monsanto Co. v. Spray-Rite Service Corp.,* — U.S. —, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984), the Court held that an antitrust plaintiff must establish, either by direct or circumstantial evidence, that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." As part of this burden, the antitrust plaintiff must produce evidence that "tends to exclude the possibility that the [defendants] were acting independently." *Id.; see Edward J. Sweeney & Sons, Inc. v. Texaco,* 637 F.2d 105, 111 (3d Cir. 1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981). Evidence of an opportunity to conspire, although relevant, is not enough to sustain an antitrust plaintiff's burden, and, without more, does not create a jury question on the issue of concerted action. *Id.* at 115.

In this case, the district court granted summary judgment for defendants because it found that Fragale could produce only evidence of an opportunity to conspire, and thus that no triable issue of fact existed. We disagree. Resolving all doubts in favor of Fragale and granting all inferences from the evidence to Fragale, we cannot say that a reasonable jury would not find unlawful

concerted activity on the part of defendants.

With regard to Bonini, the direct evidence shows that Bonini agreed to sell to Fragale, that it later repudiated that agreement, and that an intervening meeting took place between representatives of Emporium and Bonini. Bonini testified that at this meeting he told Emporium's representative that he would continue to sell to Emporium, and that he would not sell to Fragale. Fragale also proffered circumstantial evidence tending to show a motive for an agreement with Emporium, and tending to disprove the likelihood of independent action on the part of Bonini. First, there was evidence that a previous competitor of Emporium's in Cameron County had engaged in price competition with Emporium, and that neither Bonini nor Dills welcomed such competition. Second, Fragale produced evidence challenging each of Bonini's articulated reasons for refusing to deal with Fragale, which, if believed by a jury, would tend to discount the likelihood of independent activity by Bonini.

With regard to Dills, the direct evidence demonstrates that representatives of Dills and Emporium also met in late 1981, and that after this meeting Dills told Fragale that he would not sell beer to Fragale, but instead would sell exclusively to Emporium. As with Bonini, Fragale challenged each reason offered by Dills for refusing to deal with Fragale. This evidence of pretext, if believed by a jury, would disprove the likelihood of independent action on the part of Dills. Finally, the record shows that Dills sells to every other distributor in its territory other than Fragale, regardless of the size of either the distributor or the distributor's market.

In short, therefore, we do not believe that summary judgment was proper on the record in this case. Although we recognize that cases relying strongly on circumstantial evidence often force the trial court to ride the thin line between speculation and reasonable inferences, we believe that the test set forth by the Supreme Court in *Monsanto* and this circuit in *Sweeney* adequately guides the trial court in this area. If an antitrust plaintiff raises genuine issues of fact as to the existence of a common scheme or commitment, and the unlikelihood of independent action on the part of the defendants, the issue of whether the defendants unlawfully conspired belongs with the jury.

Because we are remanding for a trial on the issue of concerted activity, we need not discuss the alternative arguments raised by Fragale. We do note, however, that to the extent Fragale alternatively presents a *per se* claim and a "rule of reason" claim, each requires a finding of concerted activity and a finding of causation under the *Monsanto* and *Sweeney* test to be viable. The decisions by Dills and Bonini not to deal with Fragale are not subject to antitrust scrutiny absent proof that they resulted from agreements or other concerted activity between Dills and Emporium and Bonini and Emporium.

■ Finally, we note that the district court did not extensively address Fragale's section 2 claim, since the court predicated its decision upon the sufficiency of the evidence to demonstrate conspiracy. The exact scope of Fragale's possible section 2 claims thus remains unclear. As precedent in this court indicates, section 2 proscribes three separate offenses: (1) actual monopolization; (2) attempt to monopolize; and (3) combinations or conspiracies to monopolize. *See, e.g., Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1348 n. 16 (3d Cir. 1975). To the extent that Fragale's section 2 claims may involve alleged concerted activity between defendants, our decision today controls. Should any alternate theory under section 2 be advanced, the district court may determine such a claim on remand. We will reverse the judgment of the district court, and remand for proceedings consistent with our opinion.