James S. GREGORY, Plaintiff,

v.

Mark CHEHI, Barry Gebhart, William Danyluk, Dennis Benner, Everett Oren, Guy Lesser, Stephen J. Marcincin, and Lower Saucon County Township, Defendants.

Civ. A. No. 86–5405.

United States District Court,
E.D. Pennsylvania.

March 2, 1987.

James T. Huber, Allentown, Pa., for plaintiff.

Robert G. Hanna, Jr., Philadelphia, Pa., Stephen J. Marcincin, Hellertown, Pa., for defendants.

## MEMORANDUM AND ORDER

CAHN, District Judge.

■ On November 1, 1985, Plaintiff James Gregory was removed from his position as a Lower Saucon Township police officer. Pursuant to 42 U.S.C. § 1983 plaintiff filed this suit alleging that the defendants violated his constitutional rights by removing him from his position because of his political views. Before me are defendants' motions for summary judgment in which defendants assert that their qualified immunity as government officials and, in the alternative, the doctrine of collateral estoppel mandate a judgment in their favor. Because I find that the plaintiff has had a full and fair hearing on the merits of his claim in the Court of Common Pleas of Northampton County, Pennsylvania, I will grant the defendants' motions.[1]

Summary judgment may be granted under Federal Rule of Civil Procedure 56 if the moving party establishes that there are no genuine issues of material fact, and that, under the undisputed facts, he is entitled to judgment as a matter of law. *Fragale & Sons Beverage Co. v. Dill,* 760 F.2d 469, 472 (3d Cir.1985). In determining the existence of genuine issues of fact all inferences must be viewed in a light most favorable to the nonmoving party and all doubts must be resolved in favor of the nonmoving party. *Id.* However, the nonmoving party cannot rely on his pleadings or mere legal conclusions. *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 100 (3d Cir.), cert. denied, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

## I. FACTS

Viewed in a light most favorable to the plaintiff the evidence shows that on July 26, 1976 plaintiff began his employment as a patrolman for the Lower Saucon Township Police Department. His performance as a police officer elicited mixed reviews. Although his conduct has generally been lauded through letters of thanks and commendation from local citizens and township officials, plaintiff received five written warnings for improper conduct during the last four years of his tenure.[2]

At approximately 4:00 a.m. on October 25, 1986 Stephen J. Marcincin, a night duty Northampton County magistrate, learned through a conversation with a Hellertown police sergeant that a Lower Saucon police cruiser was parked in Hellertown, a community that adjoins Lower Saucon Township. Upon investigation Marcincin found police cruiser #401 backed into a parking lot behind plaintiff's home in Hellertown. At the time plaintiff was one of only two officers on duty in the Township. Marcincin immediately contacted Dennis Benner, vice mayor of Lower Saucon, who in turn notified the mayor, Mark Chehi, who in

---

**1.** I do not reach the merits of the defendants' alternative argument that they enjoy an immunity from liability based on their discretionary power as public officials. Although the defendants enjoy a qualified immunity from liability for actions taken within the scope of their authority, *Sourbeer v. Robinson,* 791 F.2d 1094 (3d Cir.1986), they may be held liable if their actions violate clearly established constitutional limitations. *Id.* at 1103. It is clear that if the defendants denied plaintiff a fair hearing because of his political views they violated established law. *See Robb v. City of Philadelphia,* 733 F.2d 286 (3d Cir.1984). Thus, the issue for summary judgment is whether enough evidence exists for a jury to find that the defendants' political bias was a substantial factor in their decision to uphold plaintiff's termination.

Since plaintiff has yet to complete substantial discovery it would be inappropriate for me to decide the issue at this time.

**2.** On January 22, 1982, a written reprimand was given for watching television instead of being out on patrol. On June 5, 1984, a written reprimand was given for revealing police security information to the press. On October 24, 1984, a written reprimand was given for using a C.B. radio in the police car to broadcast criticisms of the police department. On February 5, 1985, a written warning was given for spending too much time at the Town Hall instead of being out on patrol. On July 31, 1985, a written warning was given for losing a policy and procedure book.

turn notified Lower Saucon Police chief Guy Lesser.

The four officials waited at plaintiff's house for over two hours until approximately 6:18 a.m., when plaintiff entered the vehicle, transmitted a garbled radio message indicating a "business check" in Lower Saucon Township, and then left the premises. A written policy requires all Lower Saucon police officers to radio headquarters any time they leave the township, giving their location as part of the message. Plaintiff gave no such message during the time he was at his home.

On October 30, 1985, Police Chief Lesser and Township Manager VanSchaick interviewed plaintiff about the events of October 25, 1985. Plaintiff first said that he had no memory of the evening, but then admitted that he may have taken a break at home for forty-five minutes to one hour without radioing in as required. Plaintiff also stated that the reason he had radioed a business check at 6:19 a.m. was because he had forgotten to call the check in when he had conducted it earlier in his shift. Manager VanSchaick and Chief Lesser believed plaintiff was untruthful in his account of the incident. After reviewing the plaintiff's service record, Manager VanSchaick discharged plaintiff on November 1, 1985, citing as the reasons for his removal neglect of an official duty, violation of an official duty, disobedience of orders, conduct unbecoming of a police officer, and insubordination.

Pursuant to the amended Police Tenure Act, 53 P.S. § 811 et seq. (1974), plaintiff demanded a public hearing to review his removal. The Township Board of Supervisors, sitting without the mayor and vice mayor, who disqualified themselves, held a series of public hearings. As its first action, the Board denied plaintiff's request that one of the remaining supervisors, Mr. William Danyluk, disqualify himself because of his bias against plaintiff. During the hearings, counsel for both plaintiff and the township created a voluminous record detailing the incident at issue, plaintiff's record, and plaintiff's explanation of his conduct. On December 19, 1985, the Board of Supervisors unanimously sustained Manager VanSchaick's removal of plaintiff as a police officer, finding that plaintiff had engaged in the improper conduct outlined in the Manager's removal letter.

Plaintiff filed a timely appeal to the Northampton County Court of Common Pleas but waived his right to a de novo hearing. After reviewing the hearing record, the court affirmed the Board of Supervisors' decision holding that the "decision of the Board ... and the manner in which they reached it was both fair and reasonable." Gregory v. Lower Saucon Township, —— Northampton ——, (No. 1986–C–455, filed June 18, 1986). No appeal was taken from this decision, and on September 13, 1986, plaintiff filed this action seeking damages for alleged violations of his constitutional rights.

## II. Discussion

### A. Political Firing

■ Plaintiff alleges that he was dismissed because of his long-standing political opposition to the defendants. Clearly, first amendment rights of nonpolicymaking employees like plaintiff are violated if political affiliation is a substantial or motivating factor in their discharge. Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir.), cert. denied, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). See Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The hearing record and plaintiff's affidavit detail plaintiff's history of political opposition to defendants.

Plaintiff's political disagreements with defendants were frequent and substantial. See Affidavit of James Gregory, para. 7–11. In his capacity as spokesperson for the local policeman's association, plaintiff addressed the Township Council on matters of community concern, often criticizing the Council's position. He supported political opponents of defendants Marcincin and Danyluk who were successful in upsetting the incumbent defendants. Plaintiff also was

instrumental in blocking defendant Marcincin's sale of a Hellertown facility for use as an acid factory. According to plaintiff, this opposition engendered hatred by the council towards plaintiff and prompted defendants Chehi and Danyluk to declare their intention to "get" him. Indeed, plaintiff claims that defendant Gebhart admitted that plaintiff's firing was politically motivated.

■ Notwithstanding the foregoing litany of political friction between plaintiff and defendants, plaintiff's claim that defendants violated his first amendment rights is misplaced. Only Township Manager VanSchaick, now deceased, was responsible for the decision to immediately remove plaintiff from the police force. This termination was final and was reviewed only upon plaintiff's lawful request. Therefore, absent conspiracy among the defendants, Manager VanSchaick alone could be liable for the alleged "political firing."

■ Although plaintiff alleges in his complaint that defendants conspired with Manager VanSchaick to arrange his dismissal, no evidence was produced at the public hearings or through affidavits to support this claim. On the contrary, Manager VanSchaick testified under oath that he reached his decision alone, without consulting Council members or Defendant Marcincin. *See* Hearing Record at 239–42. Under these circumstances, any attack on the constitutionality of plaintiff's removal is properly directed toward Manager VanSchaick rather than toward defendants. Of course, because of their dislike of the plaintiff, defendants may well have been elated with Manager VanSchaick's decision; however, their happiness at the demise of their political opponent cannot support liability for a "political firing."

B. *Due Process*

■ Although plaintiff may not hold defendants liable for any violation of his first amendment rights by Manager VanSchaick, his quiver of legal arguments is not empty. If the defendants conspired, because of their political bias, to deny plaintiff a fair and thorough review of his termination as mandated in the Amended Police Tenure Act, then defendants may be held liable for violating plaintiff's right to due process. Defendants argue, however, that whatever the merits of plaintiff's due process claim, the doctrine of collateral estoppel bars its consideration in this court. I agree.

■ A defendant in a § 1983 action may raise the issue of collateral estoppel where the plaintiff attempts to relitigate in federal court issues decided against him in state proceedings. *Anela v. City of Wildwood,* 790 F.2d 1063, 1068 (3d Cir.1986). However, state law controls the extent to which a state proceeding estops a subsequent federal action. *Id.* The parties agree that Pennsylvania law requires the presence of four elements in order to invoke collateral estoppel:

1) the issue decided in the prior adjudication was identical with the one presented in the later action,

2) there was a final judgment on the merits,

3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and

4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Public Service Mutual Insurance Co. v. Cohen,* 616 F.2d 704 (3d Cir.1980) (*quoting Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)).

However, the parties disagree on the application of the Pennsylvania rule to the facts at bar. Although plaintiff does not dispute that he was a party to the appeal to the Northampton County Court of Common Pleas, he argues that the alleged constitutional violation was not litigated in the state court. Specifically, plaintiff contends that the issues outlined for appeal and the opinion of the court make no mention of any first amendment issues and, therefore,

the first amendment claims were not decided.

Certainly, the fact that plaintiff has, as previously discussed, mischaracterized his federal claim as a first amendment issue cannot prevent a state court adjudication of his actual due process claim from having collateral estoppel effect. The key to deciding whether the issues litigated in the state court are identical to those presented here turns not on a simplistic search for the pigeonhole that plaintiff has chosen for his federal action but requires a careful analysis of the decisions of law or fact necessary to the state court's opinion. Even though the state court did not mention the first amendment the opinion of the court, the requirements of the Police Tenure Act, and the brief of the plaintiff show that the alleged political bias of the review board was fairly and finally adjudicated by the state court.

■ On appeal, plaintiff waived the opportunity for a *de novo* hearing on his removal, thereby limiting the scope of the state court's review. Nevertheless, the scope of the review by the state court was not narrow. The court's task was "to determine whether the Board of Supervisors abused its discretion, committed an error of law, or violated any constitutional rights." *Gregory, supra,* at 3. Given this standard of review, adjudication of plaintiff's constitutional claims is implicit in the court's decision to affirm the Board of Supervisors.

■ Further, the state court's explicit, even blunt, dismissal of plaintiff's constitutional claim makes it unnecessary to infer analysis of the constitutional issue. In his brief, plaintiff urged the state court to find that defendants Chehi, Benner, Marcincin, Lesser and Danyluk were biased against him and to invalidate the Board's action because Danyluk refused to disqualify himself from the hearing panel. As in this court, plaintiff detailed the defendants' statements of animosity toward him, claiming that his removal was politically motivated. Politically motivated discharges, he argued, violated the Police Tenure Act's

clear prohibition against removal for political reasons and "infringe[d] upon his *constitutional rights to freedom of speech and freedom of association." See* Plaintiff's Brief at 20 (emphasis added).

The state court summarily rejected this statutory and *constitutional* attack, concluding "[plaintiff's] last point that the Board of Supervisors was biased is ... without merit." *Gregory, supra,* at 11. The court understood that due process would be violated if the plaintiff was denied the impartial hearing mandated by the Police Tenure Act, but noted that this did not require the hearing panel to be "free from knowledge of the events on trial or prior expressions of bias as a jury would be." *Id.* (citing *Appeal of Schultz,* 58 Pa. Commw. 24, 427 A.2d 290 (1981)). The court found reasonable the Board's decision to exclude only the two council members with direct personal knowledge of the incident precipitating removal and credited the remaining officials' statements that they had no preconceived ideas concerning plaintiff's guilt or innocence.

Plaintiff's extensive arguments and these detailed findings compel the conclusion that plaintiff took advantage of his full and fair opportunity to litigate his claim of unconstitutional bias and that the state court considered, and rejected, that claim. Given this conclusion, plaintiff is collaterally estopped from relitigating the identical issue in a federal action under 42 U.S.C. § 1983. Because plaintiff is estopped from asserting his constitutional claim, defendants are entitled to judgment as a matter of law and I will grant their motions for summary judgment. An appropriate order follows.