**MARY ANN PENSIERO, INC., d/b/a Bargain Beer and Soda, Plaintiff,**

v.

**Robert L. LINGLE, and Betty M. Lingle, t/a Lingle Distributing, Defendants.**

Civ. A. No. 86–0144.

United States District Court, M.D. Pennsylvania.

March 27, 1987.

**234**

Thomas B. Betz, Litman, Litman, Harris, Portney, & Brown, P.A., Pittsburgh, Pa., Steve C. Nicholas, Harrisburg, Pa., for plaintiff.

Michael T. Scott, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Stephen L. Grose, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Defendants, Robert L. Lingle and Betty M. Lingle, t/a Lingle Distributing (Lingles), have filed a motion for sanctions pursuant to Fed.R.Civ.P. 11, seeking an award of attorney's fees following their successful defense of this antitrust action brought by plaintiff, Mary Ann Pensiero, Inc. d/b/a Bargain Beer and Soda (Pensiero). For the reasons that follow, we will grant the motion.

### II. *Background.*

Pensiero filed a complaint setting forth three causes of action, claims under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 and a claim under section 1 of the Robinson-Patman Act, 15 U.S.C. § 13. During the time pertinent to this lawsuit, all parties in this case were beer distributors in Mifflin County, Pennsylvania. The Lingles had an "ID" license from the state which gave them the exclusive right to purchase beer from certain out-of-state manufacturers. Pensiero had a "D" license which did not authorize such purchases. While both could sell at the retail level, the Lingles, because of their "ID" license, could also resell to other distributors, like Pensiero. The claims arose from the alleged failure of the Lingles to sell certain brands of beer to Pensiero, which the Lingles had the exclusive right to purchase in accordance with their "ID" license.

The complaint was filed on January 30, 1986. Defendants filed a motion for summary judgment on April 10, 1986. Asserting that the issues were complex, plaintiff requested an extension of time for responding until May 10, 1986. The extension was granted and plaintiff responded on May 12, 1986, by way of a brief and the affidavit of Mary Ann Pensiero. No discovery was conducted in this case and plaintiff did not request any time to do so. In fact, plaintiff requested, and obtained, an order staying discovery until the motion for summary judgment was decided. Plaintiff relied solely upon the Pensiero affidavit to oppose defendants' motion.

The motion was granted by memorandum and order, dated June 5, 1986. The memorandum concentrated on plaintiff's claim under section 2 of the Sherman Act since plaintiff indicated in its brief that it was abandoning its claims under section 1 of the Sherman Act and section 1 of the Robinson-Patman Act. Summary judgment was entered in favor of defendant on the claim under section 2 of the Sherman Act because we rejected as a matter of law plaintiff's contention that the relevant product market, an essential element of a section 2 claim, could consist of brands of beer produced by two particular breweries, Anheuser-Busch and Genesee, for which defendants were the exclusive distributors.

Thereafter, Pensiero appealed to the Third Circuit Court of Appeals which affirmed our order without opinion on January 28, 1987, 810 F.2d 1163. The motion for attorney's fees was filed on February 17, 1987. In lieu of a formal mandate, on February 19, 1987, the court of appeals filed its judgment order, taxing costs against Pensiero.

## III. *Discussion.*

### A. *The Court Has Jurisdiction to Entertain the Rule 11 Motion.*

Plaintiff argues that we have no jurisdiction to entertain defendants' motion because a case or controversy no longer remained once the court of appeals docketed its mandate. Pensiero cites *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir.1983) in its support. In *Overnite*, the Seventh Circuit Court of Appeals held that a district court did not have jurisdiction over a motion for attorney's fees after the court of appeals had affirmed the lower court's opinion on the merits and had docketed its mandate. Noting that certain exceptions existed for motions filed while an appeal was pending in the court of appeals, the Seventh Circuit stated:

> [T]hese exceptions only apply to those motions filed with the district court while the appeal on the merits is pending. Regardless of the fact that over eight months elapsed between the filing of the notice of appeal and this court's docketing its mandate affirming the district court's dismissal, no motions were filed by the defendant with either the district court or this court requesting attorney's fees pursuant to 28 U.S.C. § 1927. Once this court rendered its decision and docketed its mandate affirming the district court's dismissal of Overnite's action against Chicago Industrial Tire no case or controversy any longer existed between the litigants herein.

*Id.* at 792 (brackets added).

*Overnite* was followed in *Duane Smelser Roofing Co. v. ARMM Consultants, Inc.*, 609 F.Supp. 823 (E.D.Mich.1985), which also noted the "desirability of avoiding piecemeal appeals." *Id.* at 824.

In opposition, defendants distinguish *Overnite* by noting that their motion was filed two days before the mandate issued here. They also argue, citing *Venen v. Sweet*, 758 F.2d 117 (3rd Cir.1985), that a district court has jurisdiction to entertain a motion for attorney's fees while an appeal is pending, and, without citation to authority, assert that an appeal is still pending until the mandate or order in lieu of mandate is issued. Accordingly, we would have jurisdiction over the motion for attorney's fees. Defendants also point out that in their motion for summary judgment they put plaintiff on notice that they would be seeking fees.

In our view, the time when the mandate was filed does not play a crucial role in disposing of the jurisdictional issue. While the court in *Overnite* noted the filing date as significant in that case, we believe that the material event would be the issuance of the affirmance. Certainly, the court in *Duane Smelser* took that approach. Nevertheless, for other reasons, we believe that defendants' position is correct.

In *Hicks v. Southern Maryland Health Systems Agency*, 805 F.2d 1165 (4th Cir. 1986), the Fourth Circuit Court of Appeals disagreed with the Seventh Circuit's conclusion in *Overnite*. In *Hicks*, the district court had granted defendant's motion for summary judgment and was affirmed on appeal. Thereafter, defendants filed a motion for attorney's fees with the district court pursuant to Rule 11 and certain attorney's fees statutes. On appeal, plaintiffs, relying upon *Overnite*, questioned the jurisdiction of the district court to award fees. The court observed:

> At one time it was thought by some that a motion for a fee award, filed after final judgment, should be treated as a motion to alter or amend the judgment under Rule 59(e) subject to its ten day time limitation. That notion was rejected by the Supreme Court in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). There the Supreme Court dealt explicitly with a fee award under 42 U.S.C.A. § 1988, but the reasoning applies as well to awards under Rule 11 and the other statutes. *See, e,g,, Gordon v. Heimann*, 715 F.2d 531 (11th Cir.1983).
>
> Under *White*, there is said to be no time limit for the filing of such a fee

allowance request except that the Supreme Court observed that a fee award is discretionary and that a district judge would have the right, in his discretion, to deny an award if the post-judgment request unfairly surprised or prejudiced the adverse party. The Supreme Court also observed that district courts could adopt local rules providing time limitations for the filing of such motions.

*Id.* at 1166.

Accordingly, the court concluded that: The Supreme Court seems to have held in *White* that the district court has jurisdiction to consider and grant a motion for the allowance of fees, though made several months after the conclusion of all appellate proceedings. In the absence of an applicable local rule in the district court, the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion.

*Id.* at 1167.

Commenting upon *Overnite*, the court noted that the problem of piecemeal appeals is not solved as long as a court is willing to consider, as the Seventh Circuit indicated it would, a motion for attorney's fees after an appeal is pending on the merits. If the appeal has been pending long enough, an appeal of the attorney's fees issue may not have a chance to be consolidated with the first appeal; thus necessitating two appeals in any event. The court also observed that:

One who happens to be the prevailing party at the conclusion of the proceedings in the district court may not remain the prevailing party after the appellate procedures have run their course. Even where, as here, the defendants characterize the plaintiffs' claims as entirely baseless, the appropriateness of the characterization is unsettled as long as there is a pending appeal in which the plaintiffs, with apparent earnestness, assert that there are real issues of disputed fact foreclosing the entry of summary judgment against them. There is some reason to think that such uncertainty should

be clarified before counsel and the district judge should be called upon to consider the appropriateness of a fee award and assess the amount. However an independent and collateral issue, such as a fee award, is handled, there is some risk of squandered judicial effort.

*Id.* at 1167.

*Overnite* and *Hicks* present a choice between two competing considerations, both established as longstanding concerns of the judiciary. Those are avoidance of piecemeal litigation and judicial economy. *Overnite* favors the former and *Hicks* the latter. After careful consideration, we believe we should adopt the approach taken by the court in *Hicks*. We do so not only because we agree with the rationale of *Hicks* in light of the Supreme Court's opinion in *White*, but also because the Third Circuit has already indicated, albeit in different factual circumstances, that it would agree with *Hicks*.

In *West v. Keve*, 721 F.2d 91 (3rd Cir. 1983), the issue presented was whether an order disposing of the merits of a claim was final and appealable when the successful plaintiff had filed shortly thereafter a motion for attorney's fees with the district court. The Court of Appeals concluded tht the order should be considered final and appealable, doing so "with no little reluctance, in full recognition that reasonable arguments could support a different conclusion." *Id.* at 94. The court's commentary has relevance to the issue we must decide. It stated:

We recognize that respectable arguments may be advanced to support the position that the time for filing an appeal on the merits should be optional, *i.e.*, that the appeal could be filed either after the merits judgment or after a subsequent fee adjudication. In certain cases, a unitary appeal will terminate the litigation, and thus eliminate the cost and inconvenience of piecemeal appeals. The appellate court may be able to affirm both the merits and the fee award in a single appeal. Yet there is no guarantee that a

unitary appeal will always conclude the litigation.

Only where the appellate court is able to affirm both the decision on the merits and the fee award will a unitary appeal filed after the fee determination be both more cost-effective and convenient. If the fee award is based on a "prevailing party" standard, however, *see, e.g.*, 42 U.S.C. § 1988, then an appellate court's reversal on the merits may well require a redetermination of the fee issue. In such cases, a unitary appeal saves no appellate court time because later the court may be required to review a new fee determination.

But it is the district court that expends the most time and energy on the difficult process of evaluating fee petitions and conducting hearings on them. To permit the option of a unitary appeal, with the possibility of appellate reversal on the merits, exposes district judges to the necessity of conducting two separate time-consuming fee proceedings, both prior to and after the appeal. This is an inefficient use of judicial resources, already overtaxed.

*Id.* at 94.

The Third Circuit reached a similar conclusion in *Taylor v. United States,* 749 F.2d 171 (3rd Cir.1984) (per curiam). In *Taylor,* plaintiff filed a petition for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, after the district court's judgment had been affirmed on appeal. The district court, noting a split in the circuits on the issue, denied the fee petition because it had not come within thirty days of its judgment, the deadline imposed by the statute. The court of appeals reversed. While it based its decision on legislative history dealing with the re-enactment of the EAJA, it did note its approval of those courts which, without the benefit of the legislative history, had concluded that a fee petition under the EAJA could be filed after completion of appellate proceedings. The Third Circuit stated that:

Such an interpretation avoids both unnecessary fragmentation of fee petitions and the waste of judicial resources that would be caused by filing petitions for fees in cases that are ultimately reversed or remanded.

Inasmuch as a plaintiff must be a prevailing party before he or she is entitled to EAJA fees, a petition for a fee cannot be resolved until all appeals have run; moreover, EAJA fees are available for appellate as well as trial proceedings. It would seem somewhat anomalous to require an EAJA petition to be filed before the petitioner can know the amount he or she will seek and before the petition may even be addressed.

*Id.* at 173 (footnote omitted).

■ The Third Circuit has thus concluded that in situations where the interest in avoiding piecemeal review conflicts with judicial economy, the latter interest should prevail. That situation is present in the instant case. The approach taken by defendants has the implicit approval of the Third Circuit and avoids the necessity of conducting two separate time-consuming fee proceedings. We conclude that we have jurisdiction to entertain the attorney's fees motion.

### B. *Defendants Are Entitled to Attorney's Fees Under Rule 11.*

Rule 11 provides, in pertinent part, that every pleading, motion and other paper of a party shall be signed by his attorney, that the attorney's signature certifies that he has read the pleading, and that to the best of his knowledge, information and belief formed after reasonable inquiry, the pleading is well grounded in fact and warranted by existing law. The rule requires sanctions for its violation, specifically:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the

pleading, motion, or other paper, including a reasonable attorney's fee.

As explained by the Third Circuit Court of Appeals:

> The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances, a more stringent standard than the original good-faith formula. Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11. Thus, subjective bad faith is no longer a predicate to a Rule 11 violation; the test is now an objective one of reasonableness. [citations omitted]. However, in exercising its discretion, the district court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring *what was reasonable to believe at the time the pleading, motion, or other paper was submitted.*" Notes of Advisory Committee on Rules, *supra* (emphasis added).

*Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3rd Cir.1985) (brackets added) (emphasis in original).

Plaintiff alleged in its complaint that defendants had violated section 1 of the Sherman Act by using their exclusive right to sell Genesee, Anheuser-Busch and Piels beer to restrain trade in those brands by refusing to deal with and boycott plaintiff. Pensiero also claimed that defendants conspired with others to violate section 1.

Plaintiff did not pursue this claim in opposing defendants' motion for summary judgment. Pensiero explained conclusionally that, at the time it had filed its complaint, it reasonably believed it had a basis for the claim but was withdrawing it because defendants were the main actors. In its brief in opposition to attorney's fees, plaintiff further argues that detailed information on a conspiracy is not readily known at the time a complaint is filed, the affidavit of Thomas Betz sets forth the factual underpinnings of the complaint, and its brief in opposition to the motion for

summary judgment adequately sets forth why it did not pursue the claim.[1]

■ We think this explanation is inadequate. The memorandum in opposition to the motion for summary judgment fails to refer to any facts to support the section 1 claim. Plaintiff did not have to set forth the details of the conspiracy; just facts showing that the complaint was well grounded and warranted by existing law. Some facts are set forth in the Betz affidavit but they are insufficient to establish grounds for a conspiracy, a necessary element of a section 1 claim. *See Fragale & Sons Beverage Co. v. Dill,* 760 F.2d 469 (3rd Cir.1985). For example, Betz alleges conclusorily that there was evidence that defendants acted in concert with other distributors, the Pennsylvania Malt Beverage Distributors Association (PIMDA), the manufacturers of the beer, and the Pennsylvania Liquor Control Board. The only allegations to support this conclusion are that: PIMDA had taken a position supporting defendants' refusal to sell beer and had commended the Liquor Control Board for not penalizing defendants for their refusal to deal with plaintiff; the manufacturers refused to enforce their franchise agreements by ordering defendants to sell to plaintiff. None of these allegations support a conclusion that the conspiracy aspect of the section 1 claim was well grounded in fact and law. At most they indicate unilateral action. While the affidavit would dispel any bad faith on the part of Betz, the test for imposing sanctions under Rule 11 is an objective one of reasonableness. We do not believe that the facts marshalled by plaintiff reasonably support a section 1 claim. ·

■ There is no support at all for the claim brought under section 1 of the Robinson-Patman Act. Plaintiffs abandoned this claim in its brief on the summary judgment motion, conceding that the claim was "not ripe" because plaintiffs never purchased any of the beer from defendants. A pur-

---

**1.** Thomas Betz, the attorney who prepared the complaint, is no longer associated with plaintiff's counsel.

chase is required to state a valid claim under this section. *See Fusco v. Xerox Corp.*, 676 F.2d 332 (8th Cir.1982). Plaintiff does not even attempt to defend making this claim in its brief opposing the Rule 11 motion. We therefore conclude that the motion should be granted in connection with this claim.

There remains only the section 2 claim under the Sherman Act. Defendants assert that no other courts accepted the argument that plaintiff was making concerning the relevant product market; that is, that the market could consist of brands of beer produced by only two breweries, Anheuser-Busch and Genesee. They argue accordingly that the section 2 claim had no foundation in law. Plaintiff counters that no other case had similar facts and to impose sanctions would not serve the purpose of Rule 11. It would merely chill an attorney's enthusiasm in pursuing legal or factual theories.

■ We are sensitive to the argument made by plaintiff. Certainly, a party should not be discouraged from pursuing a claim it believes has merit just because the facts of that claim have never been considered by the appropriate appellate court. Moreover, no counsel or client should fear the imposition of a financial penalty for seeking in good faith to extend existing law. Nevertheless, we believe that sanctions are justified here for the following reasons. First, plaintiff never presented the section 2 claim as an attempt to extend existing law. Second, Pensiero never presented specific facts to buttress its contention that particular brands of beer could constitute a product market. In *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105 (3rd Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981), albeit in different factual circumstances, the Third Circuit set forth the burden plaintiff would have to meet to prove this contention. The record reveals no attempt by plaintiff to meet this burden. Plaintiff could have requested additional time for discovery but did not do so, relying solely upon Mary Ann Pensiero's affidavit. The only allegations in the affidavit even marginally relevant to the section 2 claim are that beer drinkers in general "do not readily substitute one brand of such products for another," and that in the geographic market "Genesee products enjoy the greatest consumer preference" and "Anheuser-Busch products enjoy the second greatest consumer preference." (Pensiero affidavit, ¶¶ 19, 20). We fail to see how these allegations created a factual or legal basis for the section 2 claim when plaintiff must prove that the alleged monopoly power did not come about as a result of "superior product, business acumen or historic accident." *Pennsylvania Dental Ass'n v. Medical Service Ass'n of Pennsylvania*, 745 F.2d 248, 260 (3rd Cir. 1984). In short, the section 2 claim was presented in a cursory fashion and, under the circumstances of this case, sanctions are justified for its pursuit.

Finally, plaintiff points out defendants did not submit any factual support for their request for attorney's fees. This is no barrier to the imposition of sanctions. It is not unusual for a litigant to first seek approval of fees before submitting an itemization of rates and hours. We will grant defendants twenty days to submit such an itemization. They may include in that itemization any time spent in preparing it and in briefing the current motion. Plaintiff shall have fifteen days from the date of receipt of the itemization to oppose the reasonableness of the amount claimed. In lieu of this procedure, the parties may amicably agree upon the amount of attorney's fees payable to defendants. If the parties reach an amicable agreement, they shall so notify the court. In absence of information as to responsibility for initiating this action the liability for fees will be imposed upon plaintiff and its counsel.

We will issue an appropriate order.

### ORDER

AND NOW, this 27th day of March, 1987, it is ordered that:

1. Defendants' motion for sanctions in the form of reasonable attorney's fees pursuant to Fed.R.Civ.P. 11 is granted.

2. Defendants shall, within twenty (20) days of the date of this order, submit an itemization of the amount they contend is reasonable attorney's fees, along with a supporting brief if they deem it appropriate. Defendants may also claim any time spent in preparing the itemization and in briefing the current motion.

3. Plaintiff shall have fifteen (15) days from receipt of the itemization to oppose the reasonableness of the amount claimed.

4. In lieu of the above procedure, the parties may amicably agree upon the amount of attorney's fees payable to defendants. If the parties do so, they shall so notify the court.

5. The liability of plaintiff and its counsel for the attorney's fees shall be joint and several.