823 F.2d 49
 1987-1 Trade Cases 67,636
 TUNIS BROTHERS COMPANY, INC. de la Rigaudiere, Richard N.
and Smith, David C., Appellants,
v.
FORD MOTOR COMPANY, Ford Motor Credit Company, Wenner Ford
Tractor, Inc., Wenner, John S. Watson, John Crawford,
Douglas N. Fraher, Eugene W. Hasel, E.S. Nickel, Hugh
Harris, Kenneth E. and Wenzel, C.W.
 No. 84-1318.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 May 12, 1986.
Assigned May 12, 1987.
Decided July 15, 1987.
Rehearing and Rehearing In Banc Denied Aug. 6, 1987.
 
 Before HUNTER and HIGGINBOTHAM, Circuit Judges, and DEBEVOISE, District Judge.*
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This matter is before us on remand from the United States Supreme Court. In our first encounter with this appeal, Tunis Bros. Co., Inc. v. Ford Motor Co., 763 F.2d 1482 (3d Cir.1985) ("Tunis Brothers I "), we reversed the district court's order granting summary judgment in favor of the appellees and remanded this matter for trial on all counts. On April 7, 1986, the United States Supreme Court vacated that judgment, remanding the matter to us for further consideration in light of Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("Matsushita"). Ford Motor Co. v. Tunis Bros. Co., Inc., U.S. ----, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986). After considering supplemental briefs and memoranda filed by the parties,[1] we conclude that Matsushita does not require a new result. We will therefore again reverse the district court's order and remand all counts for trial.
 
 I.
 
 2
 Matsushita addresses the standard district courts must apply when deciding whether to grant summary judgment in an antitrust conspiracy case. The plaintiff in such a case must produce evidence tending to show a conspiracy in violation of the antitrust laws and, in addition, tending to show injury to the plaintiff resulting from such illegal conduct. In general terms, according to Matsushita, the plaintiff's evidence must create more than "some metaphysical doubt as to the material facts." 475 U.S. at ----, 106 S.Ct. at 1356. If in the factual context of the case the plaintiff's claim is implausible--that is, if the plaintiff's "story ... does not make sense" as a matter of economic theory, 475 U.S. at ---- n. 15, 106 S.Ct. at 1359 n. 15; accord In re Japanese Elec. Prods. Antitrust Litig., 807 F.2d 44, 47 (3d Cir.1986) ("the Supreme Court deemed [the conspiracy alleged in Matsushita ] economically senseless"), cert. denied sub nom. Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd. --- U.S. ----, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); Assam Drug Co., Inc. v. Miller Brewing Co., 798 F.2d 311, 317 (8th Cir.1986) ("[t]he Matsushita Court noted the relevance of economic realities in evaluating summary judgment motions")--then the plaintiff "must come forward with more persuasive evidence to support the[ ] claim than would otherwise be necessary." 475 U.S. at ----, 106 S.Ct. at 1356.
 
 
 3
 Of particular relevance to this appeal is the Matsushita Court's statement that, if the antitrust defendant's conduct is consistent both with permissible competition and with illegal conspiracy, evidence of such conduct "does not, standing alone, support an inference of antitrust conspiracy." 475 U.S. at ----, 106 S.Ct. at 1357. In such a situation, "[t]o survive a motion for summary judgment ..., a plaintiff seeking damages for a violation of [Sherman Act] Sec. 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." Id. (quoting Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984)). In other words, such a plaintiff "must show that the inference of [illegal] conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [the plaintiff]." Id.
 
 II.
 
 4
 Applying Matsushita's summary judgment principles to this record,[2] it can--if one carefully prunes the record to uncover select facts contained therein--be said that Ford's termination of the Tunis Ford tractor dealership is as consistent with an inference of permissible independent action by Ford Motor Company as it is with an inference of illegal conspiracy involving Ford. The evidence can be interpreted as disclosing a legitimate plan by Ford to rationalize its tractor distributor network by eliminating Tunis, or the evidence can be interpreted as disclosing a vertical conspiracy between Ford and the Wenner Ford dealership to eliminate Tunis as a Wenner Ford competitor. Given this situation, in which the appellees' challenged conduct is as consistent with permissible competition as it is with illegal conspiracy, Matsushita teaches that it is appellants' burden at the summary judgment stage to produce evidence that tends to exclude the possibility that Ford acted independently and thus to show that an inference of illegal conspiracy is reasonable in light of the competing inference of independent action.
 
 
 5
 The evidence adduced by appellants to satisfy this burden is substantial but not overwhelming; we conclude that it meets Matsushita's requirements. Cf. Marsann Co. v. Brammall, Inc., 788 F.2d 611, 613 n. 1 (9th Cir.1986) ("Matsushita ... discusses only the amount of evidence required to allow a factfinder to infer the existence of a conspiracy punishable under section 1 of the Sherman Act"). Instead of simply terminating the Tunis dealership in a straightforward manner in order to streamline its dealership structure, there is substantial evidence from which it can be inferred that Ford, acting with Wenner Ford Tractor, Inc., engaged in trickery and chicanery in order to eliminate Tunis as a competitor of Wenner Ford. The evidence shows that Ford had a substantial financial interest in Wenner Ford. It also shows that two Ford employees, appellees Fraher and Hasel, served as directors and officers of Wenner Ford. In addition, there is evidence from which one may conclude that Ford employees tricked Tunis into resigning and caused de la Rigaudiere's and Smith's application for the Kennett Square Ford tractor dealership to be rejected due to false financial information that Fraher had inserted into their dealership application. When we consider, as we must, the record as a whole, appellants' evidence tends to exclude the possibility that Ford acted independently, and it shows that an inference of illegal conspiracy between Ford and Wenner Ford is reasonable. This is, in other words, a case where the "antitrust plaintiff[s] raise[ ] genuine issues of fact as to the existence of a common scheme or commitment, and the unlikelihood of independent action on the part of the defendants[. T]he issue of whether the defendants unlawfully conspired [therefore] belongs with the jury." Fragale & Sons Beverage Co. v. Dill, 760 F.2d 469, 474 (3d Cir.1985). The legal analysis of our initial opinion was consistent with the requirements of Matsushita.
 
 III.
 
 6
 For the foregoing reasons, the judgment of the district court as to Counts I, II, III and IV will be reversed. Counts V and VI will be reinstated, and this case will be remanded for trial on all counts.
 
 JAMES HUNTER, III, Circuit Judge, dissenting:
 
 7
 In Matsushita Electric Industrial Co. v. Zenith Radio Corp., the Supreme Court concluded that "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.... To survive a motion for summary judgment ..., a plaintiff seeking damages for a violation of Sec. 1 [of the Sherman Act] must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." 475 U.S. 574, ----, 106 S.Ct. 1348, 1357 (1986) (citations omitted). Matsushita is consistent with the Supreme Court's other recent decisions clarifying the proper standards for deciding summary judgment motions. While summary judgment cannot be granted if any genuine issue of material fact remains for trial, it is now clear that no such genuine issue of material fact remains "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, 477 U.S. 242, ----, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, when ruling on a summary judgment motion, a judge must "view the evidence presented through the prism of the substantive evidentiary burden" that the parties must bear at trial. Id. at ----, 106 S.Ct. at 2513. If "the nonmovant will bear the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.1987) (in banc) (citations omitted). The Supreme Court has expressly told this court to reevaluate its denial of summary judgment to the defendants in this case in light of Matsushita. Because I believe that the majority has again failed to apply the proper legal standards to the facts of this case, I respectfully dissent.
 
 
 8
 The facts referred to by the majority--Ford's financial interest in Wenner Ford and the fact that two Ford employees served as nominal directors of Wenner Ford--do not establish the existence of an antitrust conspiracy. These facts establish, at most, the opportunity to conspire, which "although relevant, is not enough to sustain an antitrust plaintiff's burden, and, without more, does not create a jury question on the issue of concerted action." Fragale & Sons Beverage Co. v. Dill, 760 F.2d 469, 473 (3d Cir.1985). The rest of the evidence relied upon by the majority to deny defendants' motion does not demonstrate a conspiratorial refusal to deal on the part of defendants, although it may well show a completely permissible unilateral refusal to deal. See Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984) ("A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently."). The undisputed facts fully support Ford's contention that it acted independently in denying appellants the tractor franchise in Kennett Square, Pennsylvania. Those facts demonstrate a long-standing marketing strategy on the part of Ford to move its Kennett Square dealership to another part of Pennsylvania. That marketing strategy was developed in response to the consistently poor showing in tractor sales by Tunis Brothers, as well as the generally declining market in tractor sales throughout the Kennett Square area. Ford's decision to leave Kennett Square was economically rational and non-conspiratorial.
 
 
 9
 I would affirm the judgment of the district court granting summary judgment to the defendants.
 
 SUR PETITION FOR REHEARING
 
 10
 Before GIBBONS, Chief Judge, and SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG and HUNTER, Circuit Judges.
 
 
 11
 The petition for rehearing filed by defendants/appellees in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court in banc, is denied. Judges Weis, Stapleton and Hunter would grant rehearing. Judge Becker would grant rehearing in banc because "the result in this case is inconsistent with" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
 
 
 
 *
 Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 After the Supreme Court remanded Matsushita, this Court issued its final opinion in that dispute. In re Japanese Elec. Prods. Antitrust Litig., 807 F.2d 44 (3d Cir.1986). A petition for certiorari was subsequently filed, and we delayed deciding this appeal until that petition was denied on April 27, 1987. Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., --- U.S. ----, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987)
 
 
 [2]
 Because our initial opinion sets forth the facts of this case in great detail, see Tunis Brothers I, 763 F.2d at 1485-87, 1491-97, 1499, 1501, we see no need to repeat the record here. We do, however, readopt all aspects of that opinion's factual summary and analysis that are not inconsistent with this opinion