## FEDERAL TRADE COMMISSION

### v.

**MANUFACTURERS HANOVER CONSUMER SERVICES, INC., Credico Financial, Inc., General Finance Corporation, Domestic Finance Corporation, BarclaysAmerican Corporation, Postal Finance Co.**

Misc. No. 81–363.

United States District Court,
E.D. Pennsylvania.

June 30, 1983.

Leslie Rice Melman, Washington, D.C., for F.T.C.

Cecelia F. Wambold, Duane, Morris & Heckscher, Philadelphia, Pa., and Joseph W. Gelb, Weil, Gotshal & Manges, New York City, for Domestic Finance Corp.

Alfred W. Putnam, Jr., Drinker, Biddle & Reath, Philadelphia, Pa., and Robert J. Lepri, McDermott, Will & Emery, Chicago, Ill., for General Finance Corp., BarclaysAmerican Corp. and Postal Finance Co.

Edward F. Mannino, Philadelphia, Pa., for Manufacturers Hanover Consumer Service, Inc.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., and Elizabeth Head, H. Jo Schneider, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Credico Financial, Inc.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

This proceeding arises from a nationwide investigation by the Federal Trade Commission ("FTC") into certain credit practices. The investigation and litigation it instigated were described as follows by District Judge Charles Schwartz, Jr., United States District Court for the Eastern District of Louisiana:

This proceeding was invoked by the Federal Trade Commission (Commission) pursuant to Section 20 of the Federal Trade Commission Act, 15 U.S.C. 57b–1 for an order compelling respondents to comply with civil investigative demands (CIDs) issued by the Commission during the course of an investigation to determine whether respondents may be or may have been engaged in unfair or deceptive acts or practices in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(2). Specifically, the purpose of the investigation is to determine whether finance companies, automobile dealerships or others may be engaged in unfair or deceptive acts or practices in connection with arranging for or consummating of a consumer credit transaction, including misrepresenting, directly or by implication, that the purchase of credit insurance is a prerequisite to the extension of credit.

Respondents have failed to provide the requested documents on the ground that the Commission's inquiry is an unlawful attempt to investigate and regulate the 'business of insurance' which is protected by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b) (McCarran Act) from review by the Federal Trade Commission.

*FTC v. Dixie Finance Co.,* 695 F.2d 926 (5th Cir.1983; Appendix A (footnotes omitted)).

An action was filed in this district by the FTC petitioning for enforcement of the CIDs against Manufacturers Hanover Consumer Services, Inc., Credico Financial, Inc., General Finance Corporation, Domestic Finance Corporation, BarclaysAmerican Corporation and Postal Finance Co. ("enforcement action" petition). Hanover and Domestic also brought actions seeking equitable relief from the FTC investigation ("extra-enforcement" action). A prior opinion in these consolidated actions granted the FTC's motion in the extra-enforcement ac-

tion and denied motions for summary judgment therein without prejudice to the rights of defendants to resist in this enforcement action. Therefore, at this time defendant Credico's motion for declaratory judgment in the enforcement action and the FTC petition for enforcement remain outstanding. For the reasons that follow, Credico's motion for declaratory judgment in its favor is denied but an order enforcing the FTC petition will be deferred pending a hearing now scheduled.

The investigation does not transgress the McCarron-Ferguson Act, 15 U.S.C. § 1012(b) (the "Act"), as the activity the FTC seeks to investigate is not part of the "business of insurance." While the investigation pursuant to which the subpoena was issued is within the power of the FTC, the court will defer ordering its enforcement as issued until a hearing on whether the subpoena duces tecum should be enforced as issued or modified as overbroad and burdensome.

The FTC investigation is within the scope of its statutory authority unless the subject matter is part of the "business of insurance." If it is not, then the Act does not protect the activity from regulation, and therefore from investigation, by the FTC.[1] The Supreme Court has established criteria for this determination in two recent cases, *Group Life & Health Insurance v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) and *Union Life Ins. Co. v. Pireno,* —— U.S. ——, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).[2] The *Pireno* majority articulated three criteria to be used in determining whether an activity is part of the "business of insurance:"

> ... *first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

102 S.Ct. at 3009, 73 L.Ed.2d at 656. Applying these three criteria to the facts of the present case leads to a conclusion that the activity in question is not the business of insurance.

■ The first criterion is whether the practice is to spread the risk. The answer to this inquiry depends largely upon how one defines the "practice." If one defines the practice as the sale of credit insurance in connection with the sale of financed automobiles, then this practice clearly spreads risk. Many automobile purchasers pay a small premium so that the automobile purchasers unable to make finance payments and subject to loss by repossession and judgment lien are not forced to bear the entire personal risk—a classic example of underwriting. *See generally, Royal Drug, supra; SEC v. Nat. Sec. Ins.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). At the same time, the finance company benefits by the elimination of credit risk to it at the expense of the debtor who pays for this

---

**1.** *See, Union Life Ins. Co. v. Pireno,* —— U.S. ——, 102 S.Ct. 3002, 73 L.Ed.2d 647, 659 n. 9 (1982); *see generally, Dixie Finance, supra.*

**2.** Both *Royal Drug* and *Pireno* are antitrust cases, as have been most cases discussing the "business of insurance" exemption. It is possible that more leniency should be inferred in applying the "business of insurance" exemption to non-antitrust cases, as the courts have held that antitrust exemptions must be narrowly construed; *Royal Drug, supra,* 440 U.S. at 231, 99 S.Ct. at 1083; *see also, Schwartz v. Commonwealth Land Title Co.,* 374 F.Supp. 564, 573 (E.D.Pa.1974), while no like requirement exists for applications of the "business of insurance" to cases such as this one. However, the statutory language of 15 U.S.C. § 1012(b) (the Act) does not distinguish the two situations, and it has been recognized that the law has a wider scope than antitrust. *Cochran v. Paco,* 606 F.2d 460, 463 (5th Cir.1979). Therefore, the Supreme Court criteria developed in the antitrust cases will be applied here, keeping in mind that the tests were developed in a slightly different context. *But see, Thompson v. NYL Ins. Co.,* 644 F.2d 439 (5th Cir.1981) (TILA case applying different standards but keeping *Royal Drug* in mind); *Cochran, supra,* 606 F.2d at 463 (TILA case "borrowing" from the antitrust jurisprudence).

credit insurance as a part of the cost of credit. If one considers this as a credit practice, *see, Dixie Finance, supra,* then there is no risk spreading. Even if this court were to determine that there is a form of risk spreading, that would not require a finding that the activity being investigated is the business of insurance. Risk spreading is an indispensable element, *Royal Drug, supra,* 440 U.S. at 212, 99 S.Ct. at 1071, but its presence is not determinative. *Pireno, supra,* 102 S.Ct. at 3009, 73 L.Ed.2d at 656. Both the other criteria strongly suggest that this activity is not the business of insurance.

■ The second criteria is whether the practice is an integral part of the policy relationship between the insurer and the insured. This issue was the focus of the *Dixie Finance* decision, which held that the practice was credit related and not an integral part of the insurer/insured relationship. (Appendix A at 1979). Where a policyholder relationship is intertwined with other activities, the decision is to be made by focusing on "the gravamen of the complaint." *SEC, supra,* 393 U.S. at 462, 89 S.Ct. at 569. When the *Dixie Finance* court focused on this aspect it found that:

> *The Specifications set out by the Commission in its CIDs do not intrude on the insurer-insured relationship; they seek to determine only whether respondents may be making false or misleading misrepresentations to prospective borrowers that credit insurance is a prerequisite to the extension of consumer credit. The Commission is not concerned with the 'reliability, interpretation and enforcement' of the insurance contract.*

Appendix A to *Dixie Finance* 695 F.2d at 930 (emphasis added). *Cf., SEC, supra* (looking at the aim of a statute to determine its effect on the business of insurance). In this case the petition of the FTC asks for authority "to determine whether certain unnamed finance companies, car dealerships and others may be engaged in unfair or deceptive acts or practices in vio-

lation of Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) in connection with the arranging for or consummating consumer credit transactions, including but not limited to misrepresenting directly or by implication that the purchase of credit insurance is a prerequisite to the extension of credit." Complaint, ¶ 11. Although the complaint does mention insurance, the gravamen is on the credit transactions. The fact that insurance is mentioned does not make the complaint, or the transactions to be investigated, primarily concerned with the business of insurance. Where possible to characterize the practice either broadly so that the activity appears to be part of the relationship between the insurer and the insured, or narrowly so that it appears otherwise, the latter path should be followed. *See, St. Bernard Hospital v. Hospital Service Assn. of New Orleans, Inc.,* 618 F.2d 1140 (5th Cir.1980); *cf., Royal Drug* (the wholly separate nature of the two agreements not changed by a reference to one in the contract of the other).

A final practical consideration mitigates against characterizing the relationship to be investigated as between insurer and insured instead of between creditor and debtor or seller and buyer. If insurance sales in relation to these credit transactions remove them from the purview of FTC investigation and regulation, then any transaction would be removed from FTC investigation and regulatory authority merely by selling insurance as part of the transaction whether or not on credit. For instance, a refrigerator sale could be removed from CPSC review by selling the customer refrigerator insurance at the time of the sale. Congress did not intend such a result.

The third *Pireno* criteria is whether the practice is limited to entities within the insurance industry. The practice to be investigated here is not, regardless of how it is characterized. Although the automobile salesperson may be both the credit representative and insurance salesperson, the sale and credit transaction may be indepen-

dent of any credit insurance. But there is no way that there can be credit insurance without an extension of credit and no way to extend credit for an automobile purchase without the sale of an automobile. Wherefore, it would seem that the insurance depends on the financing transaction but the credit transaction is or may be independent of the insurance, which is, of course, what the investigation seeks to determine.

The *Pireno* criteria must be applied in terms of their genesis in determining exemption from antitrust laws; their application may be somewhat different in determining exemption from regulation of consumer credit transactions. The *Pireno* majority argued that Section 2(b) of the Act "was intended primarily to protect *intra*-industry cooperation in the underwriting of risks." *Pireno, supra,* 102 S.Ct. at 3010, 73 L.Ed.2d at 658–59, *citing, Royal Drug, supra,* 440 U.S. at 221, 99 S.Ct. at 1078 (emphasis added by *Pireno* Court). Congress was concerned that if insurance companies were subject to federal antitrust law, it would be impossible to pool actuarial data and set rates for policies. *See generally, Pireno.* Allowing the FTC to investigate whether the purchase of credit insurance has been involuntary rather than voluntary in the credit transactions complained of here will not affect the ability of the industry to set rates for insurance offered or sold.

In addition, if the practice sought to be investigated is characterized as the business of insurance because insurance is somehow involved, the insurance industry would be able to expand its McCarran Act protection to new activities by combining diverse activities with the sale of insurance; *e.g.,* mortgage insurance for commercial buildings, health insurance for corporate executives, etc. The courts should guard against this possibility. *Hahn v. Oregon Physicians*

*Service,* 689 F.2d 840, 843, n. 2, 1982–2 CCH Trade Cases ¶ 64,970, n. 2 (9th Cir.1982).

■ Two of the *Pireno* criteria clearly suggest this investigation is not of the business of insurance and the third can perhaps be viewed either way. Our application of the *Pireno* criteria results in a determination that the activity to be investigated to determine the need for regulation is not the business of insurance but the terms and conditions of provision of credit. *See, Nurse Midwifery Assoc. v. Hibbett,* 549 F.Supp. 1185, 1982–83 CCH Trade Cases ¶ 65,040 (M.D.Tenn.1982).[3]

The court holds that the investigation is within the power of the FTC, that is, that the investigation has a legitimate purpose and the inquiry is relevant to that purpose. There remains the issue of whether the subpoena duces tecum is overbroad and burdensome which may not have been adequately addressed. The court will hear the parties on whether the subpoenas are overbroad or unnecessarily burdensome before enforcing them as issued.

### ORDER

AND NOW, this 30th day of June, 1983, upon consideration of the outstanding motions in this matter, and for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Defendant Credico Financial Inc.'s motion for declaratory judgment in its favor is DENIED; the Federal Trade Commission is not precluded by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), from investigating the activity in connection with which it issued the subject subpoena duces tecum.

2. A hearing will be held on <u>August 5, 1983</u> at <u>2:00 p.m.</u>, in Courtroom 10–A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, at which time

---

**3.** *Nurse Midwifery* is one of the few cases to apply the *Pireno* standards *per se;* the first criterion was found to be a close question, the second and third criteria suggested that the activity was not the business of insurance; it was held that the activity was not the business of insurance.

the parties will be heard on whether the Federal Trade Commission's subpoena duces tecum should be enforced as issued or modified.