AMERICAN STANDARD LIFE AND
ACCIDENT INSURANCE
COMPANY, Plaintiff,

v.

U.R.L., INC., United Presidential Life Insurance Company, Universal Investment Company, Donald Warne, Mary Frances Ford, David Helm, Robert Mealy, Ronald Garloff, David Rugh, and James C. Sprecher, Defendants.

Civ. A. No. 88–0913.

United States District Court,
M.D. Pennsylvania.

Dec. 7, 1988.

Robert E. Yetter, Jered L. Hock, Metzger, Wickersham, Knauss & Erb, Harrisburg, Pa., for plaintiff.

Loren A. Schrum, Egli, Reilly, Wolfson, Sheffey & Schrum, Lebanon, Pa., for defendants James C. Sprecher and Ronald Garloff.

S. Walter Foulkrod, III, R. James Reynolds, Jr., Foulkrod, Reynolds & Havas, Harrisburg, Pa., for Presidential Life Ins. Co.

Christopher C. Conner, Shearer, Mette, Evans & Woodside, Harrisburg, Pa., for U.R.L., Inc.

Allen C. Warshaw, Duane, Morris & Heckscher, Harrisburg, Pa., for Universal Inv. Co., Donald Warne & Robert Mealy.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction*

On June 15, 1988, plaintiff, American Standard Life And Accident Insurance Company (American Standard), an Oklahoma insurance company, filed this action under section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S.

§§ 201–1 *et seq.*, the Pennsylvania Unfair Insurance Practices Act, 40 P.S. §§ 1171.1 *et seq.*, and Pennsylvania common law. Plaintiff seeks injunctive relief, treble and punitive damages, attorney's fees and costs.

Before the court are nearly identical motions to dismiss and motions to strike filed by defendants, United Presidential Life Insurance Company (United Presidential), U.R.L., Inc. (U.R.L.), James C. Sprecher and Ronald Garloff. Defendants David Helm, David Rugh and Mary Francis Ford, while together filing a separate motion to dismiss, have joined in United Presidential's brief in support of its motion. Defendants, Donald Warne and Robert Mealy, filed a motion for judgment on the pleadings as did Universal Investment Company (Universal Investment).

*Background*

According to the complaint, on or about January 28, 1986, Life Assurance Company of Pennsylvania (LACOP) acquired United Republic Life Insurance Company (United Republic). United Republic had several blocks of insurance business on its books, including whole life policies, universal policies and annuities. In April of 1986, plaintiff entered into negotiations with LACOP to purchase the United Republic whole life insurance blocks.[1] On or about December 31, 1986, plaintiff allegedly paid LACOP $14.7 million for a reinsurance agreement and on February 1, 1987, agreed to administer the whole life policies. LACOP thereupon transferred $30 million in reserves to plaintiff. Plaintiff has since been collecting premiums from the United Republic whole life policyholders and has been administering the policies.

Prior to LACOP's purchase of the United Republic policies in January of 1986, the individual defendants, Warne, Ford, Helm, Mealy, Garloff, Rugh, and Sprecher, had allegedly been agents of United Republic. The complaint alleges in the alternative that defendant Rugh was and remains an agent of defendant United Presidential, an Indiana corporation licensed to conduct business in Pennsylvania. United Presidential sells, *inter alia,* whole life insurance in competition with plaintiff. The individual defendants allegedly are now employed by either defendant, Universal Investment, or by defendant, U.R.L., both Pennsylvania corporations and insurance agencies. The individual defendants allegedly sell life insurance policies, issued by United Presidential and other insurance companies, in the course of their employment.

By virtue of their positions with United Republic, defendant agents allegedly acquired confidential United Republic information, including customer lists, prospect files, renewal lists, and other business records relating to the company's insurance business in Pennsylvania. Plaintiff asserts that by exploiting information gained through their access to the confidential records, the agents have been contacting the insureds under United Republic whole life policies now administered by plaintiff. Plaintiff contends that the agents, together with United Presidential and U.R.L., have conspired to induce United Republic policyholders to replace their policies with those from United Presidential and other insurance companies. According to the complaint, the agents have been falsely informing the policyholders that their United Republic policies are no longer valid because plaintiff, along with United Republic and LACOP, are no longer in business.

Plaintiff asserts that as a result of the alleged conspiracy, and the unlawful and unfair anticompetitive acts, defendants have illegally restrained plaintiff's competition and have induced numerous customers to replace existing policies with those issued by United Presidential and other companies. Plaintiff claims that despite its demands upon United Presidential to terminate the foregoing activities, United Presidential willfully and intentionally continues to allow its agents to engage in anticompetitive activities.

The present action is related to *American Standard Life and Accident Insur-*

---

1. The whole life blocks allegedly consisted of 24,000 to 26,000 policies with face values of $290 million and annual premiums of $3.7 million.

*ance Co. v. United Presidential Life Insurance Co.,* No. 88–0879 (M.D.Pa.), a case originally filed in the United States District Court for the Western District of Oklahoma and transferred here by order of that court, in which the plaintiff asserted substantially the same claims against thirteen defendants, some of whom are defendants in this action.[2] Certain defendants in the Oklahoma action filed a motion to dismiss the antitrust count of the Oklahoma complaint for failure to state a claim, to dismiss the entire action for lack of personal jurisdiction, and to transfer the action to this court on the basis of forum non conveniens. Although the Oklahoma court found the antitrust count legally sufficient to state a claim under the federal antitrust laws, it dismissed the complaint against all defendants except United Presidential and Ronald Garloff for lack of personal jurisdiction. The Oklahoma court then transferred the case to this district and, on June 21, 1988, the Clerk of Court, pursuant to Fed.R.Civ.P. 55(a), entered the default of defendant Garloff, who had not actively defended the action while it was in Oklahoma. On June 15, 1988, the plaintiff filed the instant lawsuit and on July 29, 1988, defendants filed the motions currently under consideration.

*Discussion*

We will set forth initially the governing standards for the various motions filed. In deciding the motions to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint most favorably to the plaintiff and accept as true all the well-pleaded allegations therein. *Commonwealth Bank & Trust Co., N.A. v. Russell,* 825 F.2d 12 (3d Cir.1987). The court should draw reasonable factual inferences in the plaintiff's favor and dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338, 345 (1976) (quoting *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974).

The motions to strike are governed by Fed.R.Civ.P. 12(f), which provides, in pertinent part, as follows:

(f) Motion to Strike. Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Rule 12(f) should be strictly construed. Motions to strike generally are viewed with disfavor and rarely are granted *Chiropractic Cooperative Ass'n. v. Am. Medical Ass'n,* 617 F.Supp. 264 (E.D.Mich.1985).

A motion for judgment on the pleadings is appropriate when the material facts are undisputed and judgment may be entered merely by considering the contents of the pleadings. *General Foods Corp. v. General Foods, Inc.,* 496 F.Supp. 307 (D.V.I. 1979), *aff'd without opinion,* 659 F.2d 1066 (3d Cir.1981) (table).

We note that despite the procedural disparities, the defendants' motions and arguments in support thereof are virtually identical. Accordingly, the following discussion will pertain to all defendants unless otherwise specified.

A. *Exemption under the McCarran–Ferguson Act For the Business of Insurance or, Alternatively, Failure to State a Claim under Federal Antitrust Laws*

■ Defendants' first contend that Count I of the complaint, the antitrust claim, should be dismissed because the alleged activities of the defendants are exempt from the federal antitrust laws under the McCarran–Ferguson Act. 15 U.S.C. §§ 1011, *et seq.* The McCarran–Ferguson

2. Plaintiffs named United Presidential, U.R.L., Universal Investment, Donald Warne, Mary Frances Ford, David Helm, Robert Mealy and Ronald Garloff as defendants in both cases.

David Rugh and James S. Sprecher are defendants in only the present case. Plaintiff sued six additional individuals in CV 88–0879 who are not named as defendants in the present action.

Act provides an exemption from federal antitrust laws to defendants who are able to demonstrate that a challenged activity is: 1) part of the business of insurance; 2) regulated by state law; and 3) not an agreement or act to boycott, coerce or intimidate. *Grant v. Erie Insurance Exchange*, 542 F.Supp. 457, 461 (M.D.Pa. 1982), *aff'd without opinion*, 716 F.2d 890 (3d Cir.) (table), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). Assuming, without deciding, that defendants are able to establish the second and third prongs of the test outlined above, they fail to meet their burden with regard to the first prong.

In *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the Supreme Court concluded that the "business of insurance" for the purposes of the McCarran–Ferguson Act involves primarily the relationship between the insurer and the policyholder. After reviewing the history of this exempting legislation, the Court stated as follows:

> Congress was concerned with the type of state regulation that centers around the contract of insurance.... The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance".... [W]hatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder.

393 U.S. at 460, 89 S.Ct. at 568–69, 21 L.Ed.2d at 676 (brackets added). The Court provided further guidance for determining whether a particular practice is part of the "business of insurance" within the meaning of the Act in *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). In *Royal Drug Co.*, the Supreme Court identified three criteria for making that determination:

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the

insured; and third; whether the practice is limited to entities within the insurance industry. *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647, 656 (1982) (summarizing *Royal Drug*) (brackets added) (emphasis omitted).

■ Determination of whether defendants' alleged conduct is exempt "depends largely upon how one defines the 'practice'" which is being challenged. *FTC v. Manufacturers Hanover Consumer Services, Inc.*, 567 F.Supp. 992, 994 (E.D.Pa. 1983). Defendants' argue that the practice is merely the sale of new insurance policies to plaintiff's policyholders. If so, then defendants are correct that their conduct is part of the business of insurance. *See Owens v. Aetna Life & Casualty Co.*, 654 F.2d 218 (3d Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 631 (1981). But we must look to the gravamen of the complaint. *See Feinstein v. Nettleship Co.*, 714 F.2d 928, 932 (9th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2346, 80 L.Ed.2d 820 (1984); *Manufacturers Hanover, supra*. In doing so, we conclude that defendants' innocuous characterization of the alleged conduct is incomplete. Assuming, as we must, the veracity of plaintiff's allegations, the complaint charges defendants with unlawfully using confidential information and policyholder lists to get plaintiff's customers to switch their business to defendants. We cannot conclude that this constitutes the "business of insurance" within the meaning of McCarran–Ferguson in light of the *Royal Drug* criteria.

The first *Royal Drug* criterion favors plaintiff because risk transfer or spreading is absent from the challenged practice. Of course, it could be argued that risk transfer has taken place here because defendants have transferred the risk originally undertaken by plaintiff to the defendant insurance companies. But *Royal Drug* and *Pireno* dealt with the risk transfer from the insured to the insurance company, not between two insurers. *See Pireno, supra*, 458 U.S. at 130–31, 102 S.Ct. at 3009–10, 73 L.Ed.2d at 656–57, in which the

Supreme Court spoke of the relevant spreading and transfer of risk as occurring between the policyholder and the company.

The remaining criteria also favor plaintiff. The shifting of business from one insurance company to another is not an integral part of the policy relationship between the insurer and the insured. And the practice of unlawfully using a competitor's confidential information and customer lists is not limited to the insurance industry. *See Insurance Board v. Muir*, 819 F.2d 408 (3d Cir.1987) (when entities outside the insurance industry also provide similar administrative services in connection with insurance contracts, the third criterion does not favor a finding that the practice is a part of the business of insurance).

The instant action is similar to *American Family Life Assurance Co. v. Planned Marketing Associates, Inc.*, 389 F.Supp. 1141 (E.D.Va.1974). In *American Family Life*, the plaintiff insurance company alleged that the defendant insurance companies had induced the plaintiff's agents to sell the defendants' policies instead of plaintiff's, to use plaintiff's trade secrets and customer lists to further defendants' businesses, and to switch plaintiff's policyholders to the defendants. The suit was based, in part, upon violations of section 1 of the Sherman Act, 15 U.S.C. § 1, and of sections 4 and 16 of the Clayton Act. 15 U.S.C. §§ 15, 26. Relying upon *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the court rejected a defense based upon the McCarran–Ferguson Act exemption for the business of insurance, noting that the Supreme Court had held that the exemption was focused upon the relationship between the policyholder and the insurance company and that Congress, in passing the exemption, was concerned with the relationship between insurance ratemaking and the an-

titrust laws. The district court concluded its discussion of this issue by noting:

The activities by defendants of which plaintiff complains are centered on competition between two insurance companies for business. The Supreme Court in *National Securities* suggested a number of activities in which State regulation would be paramount. These include the fixing of rates, the selling and advertising of policies, the licensing of companies and their agents, the contract of insurance, itself, the type of policy which could be issued, the policy's reliability, interpretation and enforcement, and "other activities of insurance companies relate[d] so closely to their status as reliable insurers." The activities complained of by plaintiff pertain to none of these categories nor to any other category of activity that bears on the relationship between the insurance company and the policy holder. To the contrary, the activities complained of could easily be employed by one stock brokerage firm against another as by one insurance company against another.

*Id.* at 1146–47 (brackets added in *American Family Life*).

■ Having concluded that the challenged practice is not part of the business of insurance, we turn to defendants' alternative argument that plaintiff has failed to state a meritorious antitrust claim under: 1) Section 1 of the Sherman Act, 15 U.S.C. § 1; 2) Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26; and 3) Section 3(b) of the McCarran–Ferguson Act, 15 U.S.C. § 1013(b).[3] Plaintiff argues that defendants should be estopped from challenging the sufficiency of the antitrust claim under the issue preclusion doctrine. Plaintiff also contends that, in the event defendants are not estopped from raising the sufficiency of the antitrust claim, the allegations are nevertheless legally sufficient to

---

**3.** To dispose of this issue we need only deal with the merits of the claim under section 1 of the Sherman Act since the cited Clayton Act sections merely authorize treble damages, 15 U.S.C. § 15, and injunctive relief, 15 U.S.C. § 26, for violations of the antitrust laws. Also, there is no cause of action under the McCarran–Fergu-

son Act. Plaintiff apparently referred to the Act in its complaint because 15 U.S.C. § 1013(b) preserves Sherman Act claims when there is boycott, coercion or intimidation. Any claim based directly upon the McCarran–Ferguson Act will be dismissed.

survive a motion to dismiss. We reject plaintiff's issue preclusion argument. The Oklahoma district court's order denying the defendants' motion to dismiss was not sufficiently final or detailed enough for us to give it preclusive effect. *See generally Dyndul v. Dyndul,* 620 F.2d 409 (3d Cir. 1980) (per curiam); *McLendon v. Continental Group, Inc.,* 660 F.Supp. 1553 (D.N. J.1987). We will therefore review the adequacy of the antitrust claim.[4]

█ Section 1 of the Sherman Act provides, in pertinent part, as follows:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states ... is declared to be illegal....

15 U.S.C. § 1. Recovery under this section of the Sherman Act is normally available only to a plaintiff who can prove: (1) that defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anticompetitive effects within the relevant product and geographic markets; (3) that the objects of, and conduct pursuant to, the contract or conspiracy were illegal; and (4) that plaintiff was injured as a primary result of the conspiracy. *Mid–South Grizzlies v. National Football League,* 720 F.2d 772 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984).

In the present case, however, plaintiff relies, as discussed below, on what has become known as the *Pick–Barth* per se rule to establish its claim. Plaintiff's argument is not made with precision. We are particularly unimpressed with its perception of the necessary elements of its cause of action. Plaintiff argues, without citation to authority, that it only has to allege the following to set forth a claim under section 1 of the Sherman Act: "(1) the existence of market power of the defendant; (2) an attempt by the defendant to eliminate its competitor from the market place; and (3) an adverse effect upon the market structure within the industry." (plaintiff's brief in opposition to the motions of defendants, U.R.L., United Presidential, Garloff and Sprecher at p. 26). This definition fails to confront the necessity to prove a conspiracy or combination in restraint of trade. *See Mid–South Grizzlies, supra.* It also ostensibly acknowledges the need to prove an adverse effect upon market structure when it is apparent from later portions of plaintiff's brief that it believes a per se violation is present here. Additionally, it makes no mention of injury to the plaintiff. Nevertheless, we believe we can understand plaintiff's position sufficiently to rule upon defendants' objections to plaintiff's antitrust claim.

Plaintiff's claim is predicated upon *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 508 F.2d 547 (1st Cir. 1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975), in which the First Circuit held that a conspiracy employing unfair competitive practices injuring or eliminating a competitor was actionable under section 1 of the Sherman Act if it could withstand a rule of reason analysis. In doing so, the court retreated from broad implications in two of its prior precedents, *Albert Pick–Barth Co. v. Mitchell Woodbury Corp.,* 57 F.2d 96 (1st Cir.), *cert. denied,* 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288 (1932) and *Atlantic Heel Co. v. Allied Heel Co.,* 284 F.2d 879 (1st Cir. 1960), that such conduct was a per se violation of section 1 of the Sherman Act. The court stated:

Insofar as *Pick–Barth* and *Atlantic Heel* may be said to stand for the broad proposition that unfair competitive practices accompanied by an intent to hurt a competitor constitute per se violations of the antitrust laws, we do not now accept their teaching. We do not feel it necessary to criticize their results on the fact situations there presented—an effort by a defendant which was a significant

---

**4.** Plaintiff also argues that claim preclusion prevents defendant Garloff from litigating the merits of its claim, default having been entered against him in No. 88–0879. Again, we conclude that there is insufficient finality to accept plaintiff's argument. *See generally United States v. Athlone Industries, Inc.,* 746 F.2d 977 (3d Cir.1984). *See also Tressler v. Borough of Red Lion,* 685 F.Supp. 468 (M.D.Pa.1988) (discussing the liberal standards for setting aside a default).

factor in the market to eliminate a competitor. These were instances, as were *Perryton [Wholesale, Inc. v. Pioneer Distributing Co.*, 353 F.2d 618 (10th Cir. 1965), *cert. denied*, 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966)] and [*C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F.Supp. 501 (E.D.Pa.1973)] of a sharply focused effort to drain off from a plaintiff its key personnel, confidential information, customer lists, and reputation. In the instant case the focus is not on crippling the organization of a competitor but on beating it in the market place. Perhaps the difference is only that between going to the jugular and going to one of the lesser arteries. But the difference, we feel, is enough. Paddock is leaving Whitten as an organization alone; it is concentrating on winning customers. Each customer is its target. Obviously it has subordinated business morality to its goal of more customers. But we cannot say that such attempts, even though unfair and reprehensible, amount to a per se violation of the antitrust laws.

*Id.* at 561–62 (brackets added).

Other courts have also rejected the *Pick-Barth* per se doctrine. As stated by the court in *Cutters Exchange, Inc. v. Durkoppwerke GmbH*, 1986 W.L. 942, 1986–1 Trade Cas. (CCH) ¶ 67,039 (M.D.Tenn.1986):

Almost every circuit that has considered the issue has rejected the *Pick–Barth per se* rule and has opted for a rule of reason analysis. *See, L.A. Draper & Son v. Wheelabrator–Frye, Inc.* (1984–2 TRADE CASES P 66,084), 735 F.2d 414 (11th Cir.1984); *Mid–West Underground Storage, Inc. v. Porter* (1983–2 TRADE CASES P 65,598), 717 F.2d 493 (10th Cir.1983); *A.H. Cox & Co. v. Star Machinery Co.* (1981–2 TRADE CASES P 64,238), 653 F.2d 1302 (9th Cir.1981); *Havoco of America, Ltd. v. Shell Oil Co.* (1980–2 TRADE CASES P 63,425), 626 F.2d 549 (7th Cir.1980); *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc.* (1978–1 TRADE CASES P 62,094), 578 F.2d 1256 (8th Cir.1978); *Northwest Power Products, Inc. v. Omark Industries, Inc.* (1978–2 TRADE CASES P 62,-142), 576 F.2d 83 (5th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979).

*See also Military Services Realty, Inc. v. Realty Consultants*, 823 F.2d 829 (4th Cir. 1987). Most importantly, in *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367 (3d Cir.1985), a suit brought by a distributor of Congoleum felt products, the Third Circuit indicated it would approve using the rule of reason analysis in these circumstances. The factual situation is not similar to the case at bar but the decision, nevertheless, has significance here because of the following language relying upon *Northwest Power Products, supra*:

Plaintiff contends that the district court erred in finding that Berk's actions in diverting customers away from Seaboard were not attributable to Congoleum. Even if plaintiff is correct on this point, *diversion of customers does not amount to a per se violation* and no rule of reason claim has been established. *See Northwest Products*, 576 F.2d at 90.

*Id.* at 375 n. 4 (emphasis added).

In *Whitten*, the First Circuit did indicate that a per se rule could still apply in situations where the defendant was a "significant factor in the market to eliminate a competitor," 508 F.2d at 562, but this standard was rejected by the court in *Northwest Power Products, supra*, whose reasoning we accept.

Turning now to the allegations of the complaint, we will examine them for legal sufficiency under the pleading standard for antitrust actions recently set forth in *Commonwealth of Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173 (3d Cir.1988). In *Pepsico*, while noting that an antitrust complaint should be construed liberally, the Third Circuit still required that the plaintiff:

allege sufficient facts in the complaint to survive a Rule 12(b)(6) motion. Confronted with such a motion, the court must review the allegations of fact contained in the complaint; for this purpose the court does not consider conclusory

recitations of law. Rule 8(a) requires "a short and plain *statement* of the claim showing that the pleader is entitled to relief." Rule 8(a), F.R.Civ.P. (emphasis added).

*Id.* at 179.

■ Under this standard, we first conclude that plaintiff has satisfied the third and fourth parts of a section 1 claim. *See Mid–South Grizzlies, supra.* We also conclude that plaintiff has set forth sufficient allegations of a combination or conspiracy. We recognize that the direct allegations of conspiracy are totally conclusory. Paragraph 17 of the complaint alleges that "all of the above named defendants have engaged in a design, scheme and plan to replace and twist the [United Republic] whole life business from [American Standard] ..." (brackets added). It also alleges that the "agents have entered into a combination and conspiracy with [United Presidential], and other insurance companies, to restrain or eliminate through unlawful and unfair trade activities ... the competition of [American Standard] ..." (brackets added). Paragraphs 21 and 23 contain similar conclusional language which would in general not be sufficient. *See Pepsico, supra.* But the complaint also specifically alleges that the defendant agents who were at one time employed by United Republic, all went to work for the defendant insurance agencies, that they all took confidential information, customer lists and the like, with them, that they all decided actively to solicit United Republic customers by using this information and that when the plaintiff objected to the defendant companies, the latter refused to prohibit the practice.

In *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469 (3d Cir.1985), the Third Circuit discussed the plaintiff's burden on summary judgment to show the requisite concerted action in a section 1 case. We believe we may look to this decision for guidance on the pleading issue in the instant case, *see Pepsico, supra*, 836 F.2d at 181–82, even though it was a refusal to deal case. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (relying upon *Monsanto, infra*, in a predatory pricing case). The Third Circuit stated:

The Supreme Court recently discussed the evidentiary standard that a plaintiff must meet to establish unlawful concerted activity under section 1 in a refusal to deal case. In *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984), the Court held that an antitrust plaintiff must establish, either by direct or circumstantial evidence, that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." As part of this burden, the antitrust plaintiff must produce evidence that "tends to exclude the possibility that the [defendants] were acting independently." *Id.*; *see Edward J. Sweeney & Sons, Inc. v. Texaco*, 637 F.2d 105, 111 (3d Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981). Evidence of an opportunity to conspire, although relevant, is not enough to sustain an antitrust plaintiff's burden, and, without more, does not create a jury question on the issue of concerted action. *Id.* at 115.

760 F.2d at 473 (brackets in original).

The defendant agents' specific conduct could simply be coincidental, unilateral activity, ratified by the defendant companies. But it seems unlikely that they all had the same idea at the same time. An inference of concerted activity is raised by these pleadings which we should accept at this stage of the action. *See Kinee v. Abraham Lincoln Federal Savings & Loan Ass'n*, 365 F.Supp. 975 (E.D.Pa.1973) (plaintiff in antitrust action should be given an opportunity for discovery when proof of conspiracy allegations is largely dependent upon material in possession of defendants). *Cf. Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir.1988) (review of adequacy of civil rights complaint must take into account whether plaintiff at time of pleading was in a position to know or acquire relevant factual details and discovery should be permitted when a complaint might state a claim), *petition for cert. filed*, 56 U.S.L.W. 3834 (U.S. May 23, 1988)

(No. 87–1926). *Compare Pepsico, supra* (conclusory allegations of conspiracy in antitrust action are insufficient when the only specified activity is conduct specifically authorized by exempting legislation for soft drink industry).

■ As to defendants' claim that there is no plurality of actors to form the conspiracy because generally employees cannot conspire with their employer, *see Tunis Brothers Co. v. Ford Motor Co.,* 763 F.2d 1482 (3d Cir.1985), *vacated on other grounds,* 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986), *on remand,* 823 F.2d 49 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 979 (1988), plaintiff correctly asserts that this argument has no application to the corporate defendants which can be found, of course, to have conspired with each other. *Tunis* also establishes that employees may conspire with an entity other than their own corporation. *Tunis,* 763 F.2d at 1496 n. 21. *See also Cutters Exchange, supra.*[5] The conspiracy element is not defeated by a lack of plurality of actors.

■ The remaining issue on the antitrust claim is whether plaintiff has sufficiently alleged adverse, anticompetitive effects within the relevant product and geographic markets. It is readily apparent that plaintiff has not. The complaint repeatedly alleges only injury to the plaintiff. (Complaint, ¶¶ 17, 21, 23, 24, 25). This defect in the complaint may have resulted from plaintiff's erroneous belief that defendants' alleged conduct constituted a per se violation of the Sherman Act. (Plaintiff's brief in opposition to defendants, U.R.L., United Presidential, Garloff and Sprecher's motion to dismiss at p. 27). As noted above, however, plaintiff must satisfy a rule of reason analysis which requires allegations of injury to competition in the relevant product and geographic markets. *See Tunis, su-*

*pra,* 763 F.2d at 1489–90; *Fragale, supra,* 760 F.2d at 473.

Defendants contend that the pleaded product market, the "insurance market" is too broad to constitute a market for antitrust purposes and that plaintiff has failed to allege a critical relationship between defendants' activity and interstate commerce. Plaintiff's response to this argument is unclear and is couched within the framework of the inaccurate three-prong statement of the necessary elements of its claim set forth on page 26 of its brief. Even within that framework its contentions are contradictory and ambiguous.

In the "Existence of Defendant's Market Power" section of the brief, pages 26–27, plaintiff appears to argue that the relevant product market is whole life insurance similar to the United Republic policies reinsured by plaintiff. In the next section of the brief, "Establishment of Defendant's Intent to Eliminate Plaintiff as a Competitor," the implication is that the product market is simply the "insurance market." Even further, in the succeeding section, "An Adverse Effect on the Market Structure within the Insurance Industry," plaintiff asserts that the market is the specific block of life insurance policies it acquired through its reinsurance agreement.

Fortunately, we need only look to the allegations of the complaint to resolve this issue. *See Pepsico, supra,* 836 F.2d at 181. Paragraph 17 alleges a conspiracy to divert the United Republic whole life business to the defendants and ends with a statement that they intended to eliminate plaintiff's competition "in the issuance, administration, reinsurance and delivery of insurance in the market." Paragraph 24 also talks about eliminating plaintiff from competition "in the insurance market." We take these allegations as plaintiff's identification of the relevant product market with the

---

5. Plaintiff also argues that the plurality of actors requirement is satisfied because the agents came together with the corporate defendants for the purpose of taking the plaintiff's customers. *See Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313 (8th Cir.1986). But there are no allegations in the complaint concerning when the agents were hired in relation to the beginning of

the conspiracy so we reject this contention. *See Cutters Exchange, supra.* We also reject plaintiff's contention that the agents' interest in commissions sufficiently separates their goals from that of the corporation to permit the conclusion that the agents could conspire with their own employing insurance agency. *See Pink Supply, supra.*

insurance market generally and policies that may be issued therein. Contrary to defendants' assertion we do not believe this allegation is too broad at this stage of the proceedings. True, plaintiff may have difficulty establishing its case for suppression or elimination of competition in such a broad market, but it is at least entitled to plead such a product market.[6]

There are absolutely no allegations concerning the relevant geographic market and plaintiff does not attempt to argue that it has pleaded such a market. Paragraph 9 does allege that all of the defendants' transactions took place in Pennsylvania but this is not sufficient to establish the relevant geographic market nor do we believe it was intended to do so. Accordingly, if plaintiff wishes to proceed on the antitrust claim, it must amend its complaint to allege a geographic market.

■ The antitrust claim also fails to allege an injury to competition or, in other words, an anticompetitive effect. *See Havoco, supra.* This requirement can be satisfied by allegations concerning market concentration before and after the acts of unfair competition. *Id.* It is not necessary to allege significant market power on the part of a defendant corporation. It is sufficient to allege that the conduct changed the competitive situation. Of course, if plaintiff has a basis to allege such market power, it is free to do so. Often, it is the existence of market power which enables a defendant to change the market concentration.[7]

### B. Standing Under Pennsylvania's Unfair Trade Practices and Consumer Protection Law

■ Defendants next challenge plaintiff's standing under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* (UTPCPL). Section 201–9.2 limits private actions under the UTPCPL to persons who purchase or lease "goods or services primarily for per-

sonal, family or household purposes...." 73 P.S. § 201–9.2(a) (Purdon Supp.1988–89). Defendants correctly note that cases brought under this section have been limited only to situations in which consumers have purchased goods for their personal use rather than for business purposes. *See Waldo v. North American Van Lines, Inc.,* 669 F.Supp. 722 (W.D.Pa.1987) and cases cited therein. Because the insurance blocks in this case were clearly purchased for business purposes, plaintiff lacks standing to assert a private cause of action under § 201–9.2(a) of the UTPCPL. Accordingly, Count II of the complaint shall be dismissed.

### C. Standing Under Pennsylvania's Unfair Insurance Practices Act

■ Defendants similarly challenge plaintiff's standing to assert a cause of action under the Pennsylvania Unfair Insurance Practices Act, 40 P.S. §§ 1171.1 *et seq.* (Purdon Pamphlet 1988–89) (the UIPA). The UIPA proscribes certain methods of competition, acts and practices in the insurance business in Pennsylvania. Section 7 of the UIPA, however, provides only the Pennsylvania Insurance Commissioner with standing to enforce its provisions. 40 P.S. § 1171.7.

Pennsylvania courts have steadfastly refused to imply a private cause of action under the UIPA. In *D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981), the Pennsylvania Supreme Court rejected the contention that a private cause of action could be implied under the UIPA:

> There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action.

494 Pa. at 507, 431 A.2d at 970. More recently, in *Wright v. North American Life Assurance Co.,* 372 Pa.Super. 272, 539

---

**6.** If plaintiff intended to plead a different product market, it is free to do so in an amended complaint.

**7.** We reject defendants' contention that the plaintiff has failed to plead adequately the interstate commerce connection.

A.2d 434 (1988), the court stated that "the provisions of [the UIPA] were not intended to confer a right of private action." *Id.* at 279, 539 A.2d at 438 (brackets added). In view of the statute's plain meaning and the case law interpreting its language, we find that the UIPA does not afford a private cause of action. We also reject plaintiff's attempt to distinguish prior cases because they involved insureds rather than another insurance company. Accordingly, we will dismiss Count III of the complaint, plaintiff's claim for relief under this provision.

### D. Sufficiency of Claim for Intentional Interference with Contractual Relations

 Defendants next challenge the sufficiency of plaintiff's claim for interference with contractual relations. Citing *Birl v. Philadelphia Elec. Co.*, 402 Pa. 297, 167 A.2d 472 (1960), defendants contend that the complaint fails: 1) to set forth any specific acts which allegedly interfered with plaintiff's contractual relationships; or 2) to allege that the destructive acts were "unprivileged." Initially, we note that our interpretation of the sufficiency of the complaint is governed by federal law and not state rules of pleading. *See Breslin v. Vornado, Inc.*, 559 F.Supp. 187 (E.D. Pa.1983).

With respect to defendants' first contention, we conclude that the complaint sufficiently identifies those acts which are alleged to have interfered with plaintiff's contractual relations. The complaint alleges that the individual defendants and their respective employers are unlawfully attempting to induce plaintiff's policyholders to replace their current policies with those offered by defendants. In furtherance of these efforts, defendant employers are alleged to have unlawfully utilized plaintiff's customer and renewal lists. Moreover, the individual defendants have allegedly misrepresented plaintiff's financial status in order to induce its policyholders to terminate their relationship with plaintiff. Such allegations are sufficient.

With respect to the second contention, defendants' reliance on *Birl* is misplaced. In *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *appeal dismissed and cert. denied*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), the Pennsylvania Supreme Court analyzed a claim for intentional interference with the performance of a contract under section 766 of the Restatement (Second) of Torts. Under section 766, the focus is upon whether the conduct which allegedly caused the interference is "proper," not "privileged." Thus, plaintiff need only allege that the conduct was improper, not unprivileged. We have no difficulty concluding that defendants' alleged conduct, if true, may have been improper. Plaintiff's claim survives a motion to dismiss and plaintiff may proceed on this count of the complaint.

### E. Sufficiency of Claim for Misappropriation of Trade Secrets

 The corporate defendants contend that the complaint fails to state a cause of action against them for misappropriating trade secrets because the complaint only alleges that the individual defendants misappropriated the trade secrets. We believe that the complaint adequately establishes the agency of the individual defendants on behalf of the corporate defendants in this regard, *see Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 499 A.2d 282 (1985), and this claim will not be dismissed.

### F. Sufficiency of Claim for Intentional and Wrongful Conduct

Defendants contend that Pennsylvania would not recognize plaintiff's cause of action for intentional and wrongful conduct. In light of *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22 (1984), we will permit the plaintiff to proceed, at least at this stage of the proceedings, on this claim.

### G. Sufficiency of Claim for Breach of Fiduciary Duty

 The defendants assert that plaintiff's claim for breach of fiduciary duty in Count VII should be dismissed because no such cause of action exists in Pennsylvania and that, in any event, the corporate defendants owed no fiduciary

duty to plaintiff. Contrary to defendants' assertion, Pennsylvania does recognize a cause of action for breach of fiduciary duty, *see Levin v. Garfinkle,* 499 F.Supp. 1344 (E.D.Pa.1980), *aff'd without opinion,* 642 F.2d 442 and 445 (3d Cir.1981) (table), which we believe plaintiff can assert in these circumstances. *See Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318 (1987); *Phoenix Mutual Life Insurance Co. v. McLean,* 263 F.Supp. 246 (E.D.Pa.1967). The difficulty arises because Count VII asserts that the individual defendants alone owed a fiduciary duty to plaintiff, while the prayer for relief at the end of the complaint seeks relief against all the defendants on this count. The count is therefore insufficient because it does not set forth any statement of a claim against the corporate defendants upon which liability can be based. Plaintiff's brief argues that the agents' breach of fiduciary duty can be imputed to the corporate defendants, but a brief cannot be used to cure deficiencies in a complaint. *See Pepsico, supra.* To the extent that the plaintiff is arguing that the corporate defendants can be found vicariously liable for the agents' breach of fiduciary duty, rather than arguing that the breach can be imputed directly to the corporations, we agree that a valid claim can be stated. *See B.J. McAdams, Inc. v. Boggs,* 439 F.Supp. 738 (E.D.Pa.1977). But the count as stated must be dismissed. Plaintiff, however, is given leave to amend to make the necessary allegations.

### H. *Sufficiency of Claim for Defamation*

Defendants challenge plaintiff's asserted claim for defamation on several grounds. Principally, defendants argue that the claim for defamation must be dismissed because the complaint neither alleges special damages nor identifies the persons to whom the alleged statements were made. The corporate defendants additionally argue for dismissal of the defamation claim on the ground that the complaint ascribes none of the alleged defamatory statements to them.

■ Pennsylvania law defines a publication as defamatory "if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating and dealing with him." *Baker v. Lafayette College,* 350 Pa.Super. 68, 504 A.2d 247, 251 (1986), *aff'd,* 516 Pa. 291, 532 A.2d 399 (1987). Under Pennsylvania law, if slanderous words are actionable per se, then special damages need not be alleged. *Rannels v. S.E. Nichols, Inc.,* 591 F.2d 242 (3d Cir.1979). Slanderous words injurious to one's business or profession are actionable per se. *Fram v. Yellow Cab Co.,* 380 F.Supp. 1314 (W.D.Pa.1974). In the instant case, defendants are alleged to have said that plaintiff and United Republic are "no longer in business," and that "their policies are no longer any good." (Complaint, ¶ 22). Such information could be said to be injurious to plaintiff's business and, therefore, actionable per se.[8] *See Sarkees v. Warner–West Corp.,* 349 Pa. 365, 37 A.2d 544 (1944); *Metropolis Bending Co. v. Brandwen,* 8 F.R.D. 296 (M.D.Pa.1948). Accordingly, plaintiffs need not allege special damages in this case.

■ The complaint sufficiently identifies the persons to whom the alleged defamatory statements were made. The complaint clearly states that the statements were allegedly made to policyholders of plaintiff. In view of the federal pleading requirements, such an identification is legally sufficient. Defendants' reliance upon *Itri v. Lewis,* 281 Pa.Super. 521, 422 A.2d 591 (1980) and *Gross v. United Engineers and Constructors, Inc.,* 224 Pa.Super. 233, 302 A.2d 370 (1973) is misplaced because those cases dealt with pleading requirements under state law.

Finally, the complaint alleges that the individual defendants made the defamatory statements while in the employ of the defendant insurance agencies and in conspiracy with the insurance companies. Thus, plaintiff has properly sought recovery against all defendants. Accordingly, we

---

**8.** At least, defendants do not take direct issue with this aspect of plaintiff's claim.

 

decline to dismiss plaintiff's claim for defamation.

### I. Attorney's Fees and Damages

With respect to plaintiff's request for attorney's fees and damages, we note preliminarily that the McCarran–Ferguson Act contains no provisions for either attorney's fees or damages. Thus, to the extent that the complaint seeks either of these items under this provision, it is dismissed. With respect to the antitrust claim, because it is being dismissed, we will dismiss the claim for attorney's fees predicated upon it, recognizing, however, that if plaintiff successfully amends the antitrust claim, the request for attorney's fees may be reinstated.[9] For a similar reason the treble damage claim will be dismissed since it can only be based upon a violation of the Sherman Act, there being no right of recovery for treble damages under the McCarran–Ferguson Act, and not even a cause of action under the UTPCPL as discussed above. Of course, if the antitrust claim is resurrected, treble damages could be sought.

 Defendants contend that plaintiff is not entitled to punitive damages because the complaint fails to allege conduct rising to a level of outrageousness, bad motive or reckless indifference. Defendants rely on *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 533 A.2d 436 (1987), for the proposition that "punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *Id.* at 623, 533 A.2d at 447. Defendants' assertion that the complaint merely alleges ordinary negligence, however, is clearly incorrect. The complaint sets forth numerous intentional actions which were allegedly designed to destroy plaintiff's business and position as a competitor. Certainly such allegations rise above "ordinary negligence" and into the realm of outrageousness necessary for an award of punitive damages. Defendants' motion to dismiss the claim for punitive damages is denied.

An appropriate order shall be entered.

### ORDER

AND NOW, this 7th day of December, 1988, upon consideration of defendants' various motions to dismiss, to strike, and for judgment on the pleadings, it is ordered that:

1. Counts II and III are dismissed without leave to amend.

2. Counts I and VII are dismissed but plaintiff is hereby granted twenty (20) days from the date of this order to file an amended complaint reasserting these counts in conformity with the accompanying memorandum.

3. Claims for treble damages and attorney's fees are dismissed except as they may be reasserted in conformity with the accompanying memorandum.

4. In all other respects the motions are denied.

---

**9.** We reject plaintiff's reliance upon *Becker v. Borough of Schuylkill Haven,* 200 Pa.Super. 305, 189 A.2d 764 (1963) and *Bakery and Confection-* *ery Workers International Union v. Local 464,* 84 Dauph.Co.Rep. 301 (1966), as independent support for a claim of attorney's fees.